**Monica K. MEEKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00649–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 18, 1993.

Discretionary Review Refused
June 9, 1993.

---

**374**

Allen Isbell, Houston, for appellant.

John B. Holmes, Dist. Atty., Ernest Davila, Asst. Dist. Atty., Connie Spence, Houston, for appellee.

Before O'CONNOR, DUGGAN and HEDGES, JJ.

## OPINION

O'CONNOR, Justice.

After the court denied her motion to suppress, the appellant, Monica K. Meeks, pled guilty to seven counts of credit card abuse. In accordance with a plea agreement, the court assessed punishment at 10–years confinement, probated for 10 years, 350 hours of community service, restitution of $29,626, and a $1,500 fine. We reverse and remand the cause to the trial court.

### Right to appeal

■ The State challenges the appellant's right to appeal the denial of the motion to suppress, contending the trial court did not grant the appellant permission to appeal. *See* TEX.CODE CRIM.P.ANN. art. 44.02 (Vernon 1979); TEX.R.APP.P. 40(b)(1). No permission was needed, because the appellant was sentenced pursuant to the terms of a plea agreement.

### The motion to suppress

The relevant parts of the affidavit for the search warrant are reproduced in full with the standard statements in italics.

AFFIDAVIT FOR SEARCH WARRANT

2. *There is at said suspected place and premises property concealed and kept that would tend to constitute evidence connecting a said person to an offense:*

Stolen credit cards, credit cards obtained through fraudulent application, merchandise and/or receipts for merchandise purchased by unauthorized access devices (credit cards), names, addresses, phone numbers, ledgers and personal writings pertaining to the use of unauthorized access devices, valid and/or counterfeit identifications cards, passports, and driver's licenses used to facilitate credit card abuse and fruits and instrumentalities of credit card abuse.

\*       \*       \*       \*       \*       \*

4. *It is the belief of the affiant, and he hereby charges and accuses that:*
Numerous lines of credit, resulting in the issuance of access devices (credit cards), were established by a person using the name of Monica Meeks with a social security number that does not match the name or date of birth of a Monica Meeks. The use of these credit cards resulted in a loss to the issuer of the credit cards. These accounts showed a post office box which is the same post office box that appears on Meeks' bank account in which she paid her December rent at the Hartford Park Apartments.
Affiant also believes and has reason to believe that a person known as Monica Meeks has used stolen credit cards and or fraudulently obtained credit cards to purchase electronic merchandise in Hong Kong. It is also believed that Meeks used identification bearing the names of the cardholder to facilitate these fraudulent purchases.
Affiant has learned from fraud investigators in the credit card industry that during the past six months they have sustained losses connected to stolen credit cards being used to purchase electronic equipment in Hong Kong. It is also known that many of these credit cards were stolen in Houston, Texas.
5. *Affiant has probable cause for said belief by reason of the following facts:*
Affiant, Ralph H. Vann, a special agent employed by the United States Secret Service, believes the foregoing facts and allegations to be true and correct because of the following facts:

On 12/13/91, affiant received information from a confidential source who has provided reliable information on numerous occasions. The information pertained to a person by the name of Monica who is involved with the use of stolen credit cards overseas. The informant further believes these alleged stolen credit cards are being kept at her apartment.

At the hearing on the motion to suppress, the appellant offered the affidavit and warrant into evidence. The State did not put on any evidence.

**1.  Source of informant's belief**

In point of error one, the appellant argues the trial court erred in overruling her motion to suppress, because the affidavit in support of the search warrant did not identify the source of the informant's belief the stolen credit cards were being kept in apartment 603 at 3939 Synott Road.

■ In applying *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), a reviewing court does not conduct a de novo determination of probable cause; it only decides whether there is substantial evidence to support the magistrate's determination. *Massachusetts v. Upton,* 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984); *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

The only evidence we have to review is the affidavit in support of the search warrant and the warrant itself. We must review that evidence to determine if the trial court abused its discretion in denying the motion to suppress.

■ The applicable rule of law comes to us through the Supreme Court's decision in *Gates. Hall v. State,* 795 S.W.2d 195, 197 (Tex.Crim.App.1990). It is commonly known as the "totality of the circumstances" test. Inherent in the totality of the circumstances test is whether the affiant's reliable and credible informant observed conduct that was sufficiently suspect to be more consistent with criminal than innocent activity. *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332; *Hall,* 795 S.W.2d at

197. In *Gates,* the Supreme Court said this threshold determination is not limited to whether the activity described is in actuality innocent or criminal, but it is based on the amount of suspicion attached to it. *Hall,* 795 S.W.2d at 197. The *Gates* court elaborated:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found *in a particular place.* And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates,* 462 U.S. at 239, 103 S.Ct. at 2332 (emphasis added).

■■■ Under the United States and Texas constitutions, a search warrant may not issue unless it is based upon probable cause. *Knight v. State,* 814 S.W.2d 545, 546 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Under the Texas Code of Criminal Procedure, an affidavit supporting the application for a search warrant must set forth sufficient facts that establish:

(1) a specific offense has been committed,

(2) the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and

(3) the property or items constituting evidence to be searched for or seized are *located at or on the particular person, place, or thing to be searched.*

TEX.CODE CRIM.P.ANN. art. 18.01(c) (Vernon Supp.1993) (emphasis added); *Tolentino v. State,* 638 S.W.2d 499, 501 (Tex.Crim.App. 1982); *Knight,* 814 S.W.2d at 547. Probable cause exists when the facts are sufficient to justify the conclusion the property, which is to be the object of the search, is probably in the area to be searched. *Rojas v. State,* 797 S.W.2d 41, 43 (Tex.Crim.App.

1990). Probable cause should not be controlled by the more technical standard of proof beyond a reasonable doubt or by a preponderance of the evidence. *Douglas v. State,* 794 S.W.2d 98, 100 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The reliability of the affiant and his sources of information are part of the "totality of circumstances" a magistrate should evaluate in making her probable cause determination before issuing a search warrant. *Johnson v. State,* 803 S.W.2d 272, 289 (Tex. Crim.App.1990).

■■ The appellant claims the affidavit lacked probable cause because there was no showing of when the informant obtained the information given to the affiant, and it failed to state the source of the informant's belief that stolen credit cards were being kept in the apartment. Such deficiencies required corroboration to establish the informant as credible, and here, none was offered. *See Douglas,* 794 S.W.2d at 100. If someone else had corroborated the informant's belief that the credit cards were in the appellant's apartment, the deficiency would not be fatal. *See id.*

Here, the affidavit does not recite that the informant ever claimed to have been in the appellant's home, and there is nothing in the affidavit showing the informant even knew who the appellant was. The affidavit simply says the information given by the informant "pertained to a person by the name of Monica...." The informant "believes" the cards were kept in the appellant's apartment. The informant stated no underlying facts to support the belief passed on in the tip. *See Hall,* 795 S.W.2d at 197 (the affidavit did not state how the informant knew the defendant's possession of a gun was criminal conduct); *Knight,* 814 S.W.2d at 548 (the affidavit stated the informant had been inside the apartment recently and had seen drugs two days before the warrant was issued).

Here, we have an informant "who has provided reliable information on numerous occasions." Also, there is corroborating evidence of possible illegal activity in the affidavit. The affiant stated numerous credit lines were established under the ap-

pellant's name with a social security number and date of birth that did not match. The credit cards were issued to a post office box, which also happened to be the same post office box printed on the appellant's check used to pay her rent. This suggests criminal activity was occurring, but it does not tell us where.

In *Tolentino*, a police officer found a bag that contained particles of illegal contraband, a paper wrap commonly used for marijuana, and an airline claim ticket with the name "A. Tolentino." *Tolentino*, 638 S.W.2d at 502. After the officer discovered that a person by the name "Arturo Tolentino" lived near the location where the bag was found, he executed a search warrant on the residence. The Court of Criminal Appeals stated:

> There is nothing shown in the affidavit to establish the inference and support the belief that marijuana was in the residence of the appellants.... Suspicion and conjecture do not constitute probable cause, and the facts as recited in the affidavit in this cause evidence nothing more than mere suspicion.

*Tolentino*, 638 S.W.2d at 502; *see also Hass v. State*, 790 S.W.2d 609, 611 (Tex. Crim.App.1990) ("the mere fact that the suspects had just come from a mini-warehouse and possessed alleged illegal drugs in their automobile, does not, without additional facts to link the drugs to the warehouse, justify a search of the warehouse").

Here, the informant's statement is tenuous. The affidavit does not contain any information about the circumstances justifying the informant's conclusion that contraband was located at the residence. Because nothing in the affidavit corroborates the informant's allegations, the affidavit fails to support the issuance of the warrant. *Hass*, 790 S.W.2d at 611; *Tolentino*, 638 S.W.2d at 502; *Carmichael v. State*, 607 S.W.2d 536, 539 (Tex.Crim.App. [Panel Op.] 1980). It was error for the trial court to allow introduction of the evidence seized under the warrant in question.

We sustain point of error one, because the trial court abused its discretion by finding there was substantial evidence to support the magistrate's determination.

## 2. When informant obtained information

In point of error two, the appellant argues the trial court erred in overruling her motion to suppress, because the affidavit in support of the search warrant did not state when the informant obtained the information given to the affiant on December 13, 1991.

Because we find the affidavit was insufficient on other grounds, we do not reach this issue, and we express no opinion thereon.

## 3. Discrepancy in dates

In point of error three, the appellant argues the trial court erred in overruling her motion to suppress, because the State did not offer any evidence to explain the discrepancy between the dates on the face of the affidavit supporting the search warrant.

The discrepancy in dates involves the dates listed in the body of the affidavit, the date the affidavit was sworn to, and the date the search warrant was issued. Below is a chronology from the documents:

8–15–91 The date on which the affidavit states it was subscribed and sworn to before the magistrate.

12–13–91 The date the affidavit says the affiant received information from a confidential source.

12–16–91 The date the affiant saw a black BMW parked in the drive-way of the residence of Oloruntosin Faluade; the date the affiant learned from U.S. Customs that Monica Meeks re-entered the United States on 12/1/91 at San Francisco, California.

12–17–91 The date the search warrant was executed and issued by the magistrate.

According to the date on the affidavit, the officer swore to the facts in the affidavit four months before the officer received information from the informant and four months before the warrant was

issued. The August 15, 1991, date on the affidavit may have been a clerical error. A purely technical discrepancy in dates does not automatically invalidate a search warrant. *Green v. State,* 799 S.W.2d 756, 759 (Tex.Crim.App.1990); *see Lyons v. State,* 503 S.W.2d 254, 255–56 (Tex.Crim.App. 1973) (even though the warrant was dated 3–11–71 and the affidavit was dated 7–11–71, the warrant was valid because the State explained the error as typographical at the hearing); *Martinez v. State,* 162 Tex.Crim. 356, 285 S.W.2d 221, 222 (App.1955) (even though the jurat recited the affidavit was sworn on 12–13–55, it was actually sworn on 1–13–55, the warrant was valid because the State explained the error as clerical at the hearing).

The appellant complained of the discrepancies in the dates in her motion to suppress, and the State offered no explanation for the inconsistencies at the hearing on the motion to suppress. In *Green,* the Court of Criminal Appeals said:

> We agree with the State the warrant and supporting affidavit must be read together and a determination of validity made according to the totality of circumstances, the yardstick of measurement with the question of probable cause. However, because there is an apparent discrepancy found on the face of the documents which call into question the validity of the warrant executed, there must also be an explanation for the discrepancy in the record to justify going outside the instruments.

*Green,* 799 S.W.2d at 760.

There is no evidence in the record to explain the discrepancies in the dates. We sustain point of error three and reverse and remand the cause to the trial court.