**Freddie Raye LOCKETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00486–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 12, 1994.

Discretionary Review Refused
Sept. 21, 1994.

**186**

Kent A. Schaffer, Houston, for appellant.

Eric D. Smith, Bryan, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION ON REMAND

CANNON, Justice.

### I. Nature of the Case

This is an appeal of a conviction for aggravated possession of cocaine (more than 400 grams). Appellant Lockett moved to suppress the cocaine claiming that it was obtained by police through an illegal search and seizure. He argued that (1) an initial search of his residence, under federal auspices, was illegal because the affidavit supporting the federal search warrant did not contain credible, reliable, or non-stale information, and (2) a follow-up search under state auspices was the fruit of the illegal federal search. After his motion to suppress was denied, Lockett pled no contest, and the trial court found him guilty. Lockett appealed the denial of his motion to suppress.

In *Lockett v. State*, 852 S.W.2d 636 (Tex. App.—Houston [14th Dist.] 1993), we affirmed Lockett's conviction, holding, *inter alia*, that the search by state authorities was based on a valid state warrant supported by information independent of the federal search. Lockett obtained discretionary review. In *Lockett v. State*, 861 S.W.2d 253 (Tex.Crim.App.1993), the Court vacated our judgment and remanded the cause to us be-

cause we had not separately analyzed Lockett's federal and state constitutional contentions. Having now done so, we affirm.

### II. Factual Overview

On January 29, 1991, Agent Gary Orchowski, Bureau of Alcohol, Tobacco, and Firearms ("ATF"), learned from a confidential source that Lockett, a convicted felon, was in possession of several firearms. Agent Orchowski met with Lockett's parole officer who verified Lockett's address and confirmed that Lockett had been convicted of the felony offense of possession of a controlled substance. The parole officer also provided Orchowski with Lockett's parole certificate containing the following condition: "I shall not own, possess, use, sell nor have under my control any firearm...." Orchowski checked out Lockett's address and observed several vehicles parked there as detailed by the confidential source.

On February 12, Agent Orchowski checked Lockett's prison record verifying Lockett's felony conviction in July 1987 and parole in December 1988.

On February 14, Orchowski met with a second confidential source who had also seen Lockett in possession of firearms.

On February 20, Orchowski spoke with ATF experts on the interstate nexus of firearms. They opined that the weapons described by the confidential informants were not manufactured in Texas and must have traveled in interstate commerce. It is unlawful for a person who, after having been convicted of a crime punishable by a term exceeding one year, to possess a firearm which has moved in interstate commerce. *See* 18 U.S.C.A. § 922(g)(1) (West Supp.1993).

On March 11, Orchowski confirmed that Lockett was still residing at his last known address.

On March 12, Agent Orchowski, prepared an application and affidavit for a federal search warrant setting out the basis for probable cause and describing the weapons to be seized. The federal warrant was issued by a federal magistrate the same day.

On March 15, at 9:15 a.m., Agent Orchowski, along with other federal and state offi-

cers, executed the search warrant on Lockett's residence. The search did not yield any of the weapons described in the warrant but did produce a .44–caliber Ruger pistol and ammunition (21 rounds of .44–caliber, 11 rounds of .22–caliber, and 1 round of .38–caliber). More importantly for purposes of this appeal, a federal agent found in a kitchen cabinet a plastic baggie containing a white powdery substance. Officer Mark Hiatt, of the Brazos Valley Narcotic Trafficking Task Force, who participated in the search, recognized the white powder as cocaine. The federal search was terminated at this point while Officer Hiatt obtained a state search warrant.

Officer Hiatt prepared an affidavit in support of the state search warrant targeting cocaine and evidence of drug trafficking. The affidavit detailed the discovery of the suspected cocaine at Lockett's residence as well as other information unrelated to the federal search. At 12:15 p.m., a state magistrate issued the warrant.

The search was resumed, and the cocaine, which became the basis of the possession charge against Lockett, was seized.

### III. The Federal Search Warrant

In point of error one of Lockett's original-submission brief, he complains that the March 12, 1991 federal search warrant was based on information received from confidential informants who were not shown to be credible or reliable. In point two, Lockett contends that the federal warrant was based upon information that was too "stale" to support a finding of probable cause. We note that these points of error were rebriefed without substantial change as supplemental points one and two in Lockett's brief on remand.

### A. Fourth Amendment

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Under the United States and Texas Constitutions, a search warrant may not issue unless it is based on probable cause. *Meeks v. State,* 851 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). Probable cause to issue a search warrant exists where facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a man of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place. *Cassias v. State,* 719 S.W.2d 585, 587 (Tex.Crim.App.1986). "[T]he traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983), quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). In *Gates,* the Court disapproved of the hypertechnical rules of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of a common-sense "totality-of-the-circumstances" test. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

Courts had come to interpret *Aguilar* and *Spinelli* as requiring that an affidavit used to support a probable cause determination had to affirmatively and expressly establish the basis of knowledge and credibility or reliability of information obtained from informants. *Id.* at 234, 103 S.Ct. at 2330. The *Gates* Court opined that, when probable cause is based on an informant's hearsay, the informant's basis of knowledge, credibility, and reliability were indeed highly relevant factors. However, these factors should not be "understood as entirely separate and independent requirements to be rigidly exacted in every case." *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. "Rather ... they should be understood as simply closely intertwined is-

sues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

Simply put, the question in the present case is whether, using a common-sense approach, the federal magistrate had a substantial basis for finding that there was a fair probability that the firearms would be found in Lockett's residence. *Id.* at 238, 103 S.Ct. at 2332.

### 1. Credibility & Reliability of Informants

Agent Orchowski based his affidavit supporting the federal search warrant on information derived from his own investigation, other law enforcement agencies, and confidential informants. It is true that the affidavit of Agent Orchowski did not expressly address the credibility or reliability of his confidential sources of information. However, the basis of knowledge of the informants was personal observation, an inherently reliable method of data collection. Moreover, the credibility and reliability of a confidential informant may be bolstered by corroboration with independent police work or by cross-corroboration with other informants. *See Doescher v. State,* 578 S.W.2d 385, 392 (Tex. Crim.App.1978).

In his affidavit, Agent Orchowski detailed the information given to him by Informant # 1: (1) Lockett resided at a specific address, (2) Lockett kept two Cadillacs, a Mazda RX–7, a Corvette, and a pickup truck at his residence, (3) Lockett had recently purchased a ranch in Brazos County, (4) Lockett had told the informant that he was a convicted felon, (5) the informant had known Lockett for at least five years and had always known him to possess various firearms, (6) Lockett was in possession of several firearms, (7) the informant had personally viewed inside Lockett's residence, within the past 120 days, a 12–gauge pump-action shotgun, chrome finish, with a pistol grip, and (8) the informant had personally viewed a 30–30 caliber rifle, used by Lockett for deer hunting and stored in Lockett's residence.

Agent Orchowski independently verified the information in items (1) through (4). Also, Orchowski learned from Lockett's parole officer that he had seen a gun cabinet in Lockett's residence in December 1990, though he could not confirm that there were guns in the cabinet.

Orchowski learned from an Informant # 2 that (1) the informant had known Lockett for two and one-half years and knew him to be a convicted felon, and (2) the informant had seen a deer rifle in a gun cabinet and a chrome .357 magnum revolver inside Lockett's residence within the past 90 days. The informant also verified Informant # 1's assertions regarding Lockett's vehicles and real property and indicated that the property would be in the name of Lockett's mother.

The parole officer's information corroborated Informant # 2's statement about the gun cabinet. In turn, Informant # 2's information on the deer rifle and other innocent facts jived with Informant # 1's report. Finally, Agent Orchowski independently verified the innocent facts detailed by both informants, including the fact that the utilities at Lockett's residence and ranch were in the name of Lockett's mother.

The basis of knowledge and credibility of informants are highly relevant factors in determining whether a magistrate had a substantial basis for his determination of probable cause. However, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. We find that Agent Orchowski's affidavit supporting the federal search warrant contained sufficient indicia of reliability through corroboration by independent police investigation and by cross-correlation between the informant's observations. We therefore conclude that Agent Orchowski's affidavit was not deficient for failing to expressly set out underlying circumstances substantiating the informants credibility and reliability.

### 2. Staleness

"Facts stated in an affidavit must be so closely related to the time of the issuance

of the warrant that a finding of probable cause is justified at that time." *Flores v. State,* 827 S.W.2d 416, 418 (Tex.App.—Corpus Christi 1992, pet. ref'd). However,

> [t]he amount of delay that will make information stale for search warrant purposes depends upon the particular facts of a case, including the nature of criminal activity and the type of evidence sought. Mechanical count of days is of little assistance in this determination; but, rather, common sense and reasonableness must prevail, with considerable deference to be given to the magistrate's judgment based on the facts before him, absent arbitrariness.

*Ellis v. State,* 722 S.W.2d 192, 196–97 (Tex. App.—Dallas 1986, no pet.), citing *United States v. Freeman,* 685 F.2d 942 (5th Cir. 1982). Furthermore, "where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *Bernard v. State,* 807 S.W.2d 359, 365 (Tex.App.—Houston [14th Dist.] 1991, no pet.), quoting *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972); *see also Bills v. State,* 855 S.W.2d 79, 82 (Tex.App.—Fort Worth 1993, no pet.) (six-month delay not too long, given that criminal activity had been on-going for several years).

We find that Agent Orchowski's affidavit contained facts from which the magistrate could have inferred that Lockett presently possessed the specified firearms in his residence. On January 29, 1991, Informant # 1 stated that he had known Lockett for the past five years and had always known him to own various firearms. The informant specifically stated that Lockett stored in his residence a 30–30 caliber rifle that he used for deer hunting. The informant also personally viewed a 12–gauge shotgun in Lockett's residence within the past four months (no earlier than October 1990).

Information obtained from Informant # 2 on February 14 was more current. He had personally known Lockett for the last two and a half years and had seen a .357 revolver and deer rifle in Lockett's residence within the last three months (no earlier than November 1990). Furthermore, the informant had made visits to Lockett's residence during the last three months and had verified the presence of the firearms on each occasion.

Lockett's parole officer indicated that he saw a gun cabinet in Lockett's residence in December 1990.

Agent Orchowski averred that, based on his training and experience, individuals who own or possess firearms and ammunition store them in their residence, vehicles, or on their person for extended periods of time as they treat them as keep-sake items or mementos.

Agent Orchowski's affidavit presented the federal magistrate with information from which he could have concluded that Lockett was in continuous possession of firearms over an extended period. We find that the magistrate had a substantial basis to conclude that one or more of the described firearms would be at Lockett's residence at the time of the search. "When ... items have been viewed more than once, and there is nothing to suggest that the ... items will not be at the suspected place in the future, the magistrate may weigh this fact in his calculations concerning the probability that the items will be on the suspected property." *Flores,* 827 S.W.2d at 419–20. The fact that a different weapon was actually found does not invalidate the warrant. *Douglas v. State,* 794 S.W.2d 98, 101 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

In sum, we hold that the federal magistrate had a substantial basis for finding probable cause and issuing the federal search warrant. Therefore, the search of Lockett's residence pursuant to the warrant was reasonable and did not violate the Fourth Amendment.

## B. Texas Constitution's Art. I, § 9

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor

without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

■ At the outset, the question arises why it is necessary to consider whether the *federal* warrant was valid under *state* constitutional standards. The answer is that state officers participated in the search under the federal warrant. "Evidence of antecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between federal and state officers may sufficiently establish agency and serve to bring the conduct of the federal agents under the color of state law." *State v. Toone*, 823 S.W.2d 744, 748 (Tex.App.—Dallas 1992), *aff'd on other grounds*, 872 S.W.2d 750 (Tex. Crim.App.1994). The use by state officials of evidence obtained through a search that did not comport with state constitutional protections would be problematic. State participation in the federal search could prevent the state from accepting the "silver platter" of evidence from the federal search and using that evidence as a basis for a state search warrant or as evidence in a state criminal proceeding. *See id.* This would be true even if the search complied with federal constitutional safeguards.

### 1. Credibility and Reliability of Informants

Lockett argues that, under the Texas Constitution, an affidavit supporting a probable cause determination must show the credibility and reliability of an informant in accordance with *Aguilar and Spinelli. See Aguilar, supra; and Spinelli, supra.* However, in *Gates*, the Supreme Court disapproved of this hypertechnical approach in favor of a common-sense "totality of the circumstances" test. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. The Texas Court of Criminal Appeals adopted this "totality of the circumstances" approach in interpreting Art. I, § 9 of the Texas Constitution. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991).

Lockett argues that *Heitman* overruled *Eisenhauer*'s adoption of the *Gates* "totality" test. We disagree. We read *Heitman* as overruling only one aspect of *Eisenhauer*, that being the *Eisenhauer* Court's statement that its opinion was "made to stay in step with the federal constitutional model for probable cause determinations." *Heitman*, 815 S.W.2d at 684; *Eisenhauer*, 754 S.W.2d at 164. The *Heitman* Court asserted that it declined "to blindly follow the Supreme Court's decisions interpreting the Fourth Amendment in addressing the issue under Art. I, § 9 [of the Texas Constitution]." *Heitman*, 815 S.W.2d at 690. *Heitman* overruled *Eisenhauer* to the extent that *Eisenhauer* was in conflict with that principle. *See id.* The Court of Criminal Appeals has subsequently held that "In order to issue a valid warrant ..., the underlying affidavit must contain, viewed in the *totality of the circumstances*, information sufficient to justify a neutral and detached magistrate issuing it." *State v. Martin*, 833 S.W.2d 129, 132 (Tex. Crim.App.1992) (arrest warrant) (emphasis added); *see also Flores*, 827 S.W.2d at 419 (search warrant). In *Johnson v. State*, 864 S.W.2d 708, 717–719 (Tex.App.—Dallas 1993, pet. granted), the court held that there was no historical or textual basis for affording a defendant greater rights under art. I, § 9 than under the Fourth Amendment; *see also Murray v. State*, 864 S.W.2d 111, 115 (Tex. App.—Texarkana 1993, pet. ref'd) (no Texas statute or case requires a more restrictive standard of review for ... probable cause under art. I, § 9 than under the Fourth Amendment).

■ In short, we apply the common-sense "totality of the circumstances" approach, applicable to both federal and state constitutional analyses, in evaluating Agent Orchowski's affidavit in support of the federal search warrant. As discussed earlier, the basis of knowledge and credibility or reliability of the informants are highly relevant factors in the totality milieu, but not factors governed by hypertechnical rules. We have found that the cross-corroboration between the informants, the parole officer, and independent police investigation provided sufficient indicia of reliability for the information from the confidential sources.

## 2. Staleness

Lockett does not contend that different standards apply for evaluating the timeliness of information under the federal and state constitutions. We have found, under the "totality of the circumstances," that the federal magistrate could have determined that the described firearms would be at Lockett's residence. The information available to the magistrate provided a substantial basis for the conclusion that Lockett was regularly in possession of firearms, had been for several years, and probably would still be when the warrant was executed.

In sum, we conclude that the search of Lockett's residence under the federal search warrant did not violate Lockett's rights under the Fourth Amendment to the United States Constitution or Article I, § 9 of the Texas Constitution. We overrule points one and two.

## IV. The State Search Warrant

■ In point three, Lockett maintains that the March 15 state search warrant authorizing the seizure of a substance alleged to be cocaine was invalid since it was based upon observations made during the illegal federal search of Lockett's residence. We note that this point of error was rebriefed without substantial change as supplemental point three in Lockett's brief on remand.

The federal warrant was executed on March 15, 1991. In the course of the search, a federal agent discovered in a kitchen cabinet a clear, plastic zip-lock bag containing a white powdery substance. The search was stopped while state officials secured a state search warrant.

Officer Mark Hiatt, a licensed Peace Officer with the State of Texas, prepared an affidavit in support of the state warrant. He established his qualifications and experience and averred that he had assisted in the search under the federal warrant. He stated that, based on his experience, he recognized as cocaine the powdery substance found in the baggie. Lockett complains that this observation was the primary basis for the state warrant and that the observation was the fruit of the illegal federal search. Therefore, he argues, the state warrant was invalid and the subsequent state search illegal.

First, we have found that the search by federal and state officers under the federal warrant was legal. The discovery of the powdery substance in the baggie in Lockett's residence was not the fruit of an illegal search, but rather, provided a proper basis for the state search warrant.

Second, even ignoring the description of the discovery of the cocaine in Hiatt's affidavit, we would find that the affidavit provided the state magistrate with independent substantial grounds for her determination of probable cause that cocaine and/or evidence of drug trafficking would be found at Lockett's residence.

Hiatt stated in his affidavit that he received information from other officers that Lockett regularly traffics in cocaine. He averred that an officer told him that multiple informants, who had repeatedly given accurate and reliable information over a two-year period, told the officer that "Lockett ... was one of the biggest, if not the biggest, cocaine distributor in the north Bryan area, and that virtually all of the 'crack' cocaine that is sold on the west side of Bryan was controlled by ... Lockett." The officer was told that Lockett "goes to Houston and purchases a kilo of cocaine at a time." The officer told Hiatt that he had information that Lockett had purchased with cash several pieces of real estate and vehicles but that Lockett did not have a legitimate source of income.

Officer Hiatt's use of the phrases "*regularly traffics*," "*was* [a] cocaine distributor," "cocaine that *is sold* on the west side of Bryan *was controlled*," "*goes to* Houston and *purchases*," all indicate an ongoing activity and tend to show that the information was not stale. *See Flores*, 827 S.W.2d at 419. Officer Hiatt averred that in his experience "individuals that ... traffic in narcotics secrete the narcotics throughout their residence."

Applying the "totality of the circumstances" test pertinent to both federal and state constitutional analysis, we conclude that Hiatt's affidavit provided the state magistrate with a sufficient basis to determine that narcotics would be found at Lockett's resi-

dence at the time of the execution of the warrant. This is so, even disregarding the portions of the affidavit referring to the discovery of the suspected cocaine during the federal search.

We note that, in our original opinion, we held, *inter alia*, that the Texas "good faith" exception to the Texas exclusionary rule applied and provided an independent basis for the validity of the state search of Lockett's residence. *See Lockett*, 852 S.W.2d at 639. Our current analysis renders reliance on this "good faith" exception unnecessary.

We overrule point three.

### V. Conclusion

We hold that the search of Lockett's residence and seizure of the cocaine was permissible under the U.S. and Texas Constitutions. The trial court did not abuse its discretion in denying Lockett's motion to suppress.

Finding no error, we affirm.

BOWERS, J., not participating.