

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00232-CR

**SHARLOTTIE SHONTAYE KELLEY,**

                                   **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                   **Appellee**

---

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 14-03572-CRF-361**

---

## MEMORANDUM OPINION

---

In two issues, appellant, Sharlottie Shontaye Kelley, challenges her conviction for unlawful possession of a controlled substance, one gram or more but less than four grams of 1-(3-trifluoromethylphenyl)piperazine, with intent to deliver in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(c) (West Supp. 2016). Specifically, Kelley contends that: (1) the trial court abused its discretion in denying her motion to suppress where the probable-cause affidavit supporting the search warrant failed to establish

probable cause and relied on stale information; and (2) the evidence supporting her conviction is insufficient. We affirm.[1]

## I. BACKGROUND

Here, Kelley was charged by indictment with one count of possession of a controlled substance—3,4-methylenedioxy methamphetamine—with the intent to deliver an amount of one gram or more but less than four grams in a drug-free zone.[2] Later, the trial court granted the State's motion to amend Count One of the indictment to reflect that Kelley was in possession of "1-(3-trifluoromethylphenyl)piperazine," rather than "3,4-methylenedioxy methamphetamine." The case was tried to a jury, and at the conclusion of the evidence, the jury found Kelley guilty of the charged offense. The trial court assessed punishment at eight years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

---

[1] In light of our disposition, all pending motions are dismissed as moot.

[2] The indictment also alleged a second count:

that . . . SHARLOTTIE KELLEY . . . did then an there intentionally or knowingly possess a controlled substance, namely, a material, compound, mixture, or preparation in an amount of 28 grams or more but less than 200 grams, that contained no more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts . . . .

However, the record does not contain a final judgment of conviction as to this second count. Indeed, the State notes in its brief that Kelley was "tried only on Count One of the Indictment."

## II.    MOTION TO SUPPRESS

In her first issue, Kelley argues that the trial court abused its discretion in denying her motion to suppress because the probable-cause affidavit did not establish probable cause, and because it relied on stale information.  We disagree.

Ordinarily, a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard, giving almost total deference to the trial court's findings of fact but reviewing conclusions of law de novo.  *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).  However, when ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is limited to the four corners of the affidavit supporting the warrant and, thus, makes no factual or credibility determinations.  *Id.*  Our review of a trial court's ruling on a motion to suppress evidence requires us to be highly deferential to a magistrate's decision to issue a search warrant, reflecting the constitutional preference that searches be conducted pursuant to a warrant.  *Id.*; *see Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

We must determine whether the magistrate had a substantial basis for concluding that probable cause existed.  *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).  "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location."  *Rodriguez*, 232 S.W.3d at 60 (citing *Gates*, 462 U.S. at 238, 103 S. Ct. 2317).  It is

a 'flexible and nondemanding' standard." *Id.* (citing 40 GEORGE W. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 5.03 at 292 (2d ed. 2001)). To justify the issuance of a search warrant, the affidavit in support thereof must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2016). While our review is limited to the four corners of the affidavit, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt[,] we defer to all reasonable inferences that the magistrate could have made." *Id.* at 61; *see State v. Duarte*, 389 S.W.3d 349, 354-55 (Tex. Crim. App. 2012) (noting that the focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit).

In his affidavit, Paul Mahoney, a Bryan police officer with extensive training and experience in street-level narcotics trafficking, noted the following, among other things:

> Your Affiant and members of the Bryan Police Department's narcotics unit received information from a Confidential Informant, hereafter referred to as CI that a person who goes by the nickname of "Wa-Ki" is involved in the distribution of crack cocaine from 717 East Martin Luther King BLVD in Bryan, Brazos County Texas, hereafter referred to as Said Suspected Place.

Your Affiant performed a Bryan Texas Utilities check and learned that Sharlottie Kelly . . ., hereafter referred to as Said Suspected Party #1 has current and active utilities at Said Suspected Place.

On April 6th, 2014, Brazos County 911 received a call for service regarding the smell of marijuana coming from Said Suspected Place. Bryan Police Department patrol officers responded and contacted Said Suspected Party #1 and Said Suspected Party #2 [Kelley's boyfriend, Stanturas Perry]. No arrests were made.

On April 8th, 2014, Brazos County 911 received a call for service regarding lots of traffic in and out of Said Suspected Place. Bryan Police Department patrol officers responded. No arrests were made.

**Within the past 72 hours** of the application for this warrant, Your Affiant and teammates performed a "controlled buy" utilizing CI. The CI was provided with Bryan Police Department Imprest Funds. The CI traveled to Said Suspected Place with surveillance officers in close proximity. The CI entered Said Suspected Place and negotiated a price for .02 grams of crack cocaine. The CI then and there purchased .02 grams of crack cocaine in exchange for the Bryan Police Department Imprest Funds. The crack cocaine was sold to the CI by a black male believed to be Said Suspected Party #2.

A photograph of Said Suspected Party #1 was shown to the CI. The CI confirmed that "Wa-Ki" is Said Suspected Party #1. According to a Bryan Police Department records check as well as information from a different confidential informant indicates that Said Suspected Party #2 is in fact the [boyfriend] of Said Suspected Party #1 who Your Affiant and teammates believe to be the person who actually sold crack cocaine to the CI as mentioned previously.

The CI has shown to be credible and reliable and has provided much information regarding the drug trade in the Bryan, Brazos County Texas area. Information provided by the CI has led to the recovery of crack cocaine, marijuana, US Currency and prescription pills. Information provided by the CI has also led to the issuance of multiple search warrants where felony arrests have been made.

**It is Your Affiant's belief that a search of Said Suspected Place will yield more crack cocaine.**

(Emphasis in original).

In her pre-trial motion to suppress, Kelley contended that Mahoney's affidavit did not establish probable cause to search her residence because the confidential informant had no basis for knowledge, especially considering no dates or specific addresses were included in the affidavit. Kelley also complained that the controlled buy did not establish probable cause because she did not sell anything to the confidential informant. And finally, Kelley argued that the evidence obtained as a result of the search warrant should be suppressed because the confidential informant recanted his story and admitted to taking money in exchange for a recantation in another criminal investigation that transpired a short time after he provided information in the instant case.

However, despite the foregoing, at the pre-trial hearing on the motion to suppress, Kelley limited her argument to the issue of the confidential informant's reliability in light of the allegation that he recanted his story in another case in exchange for money.[3] In any event, at the conclusion of the hearing, the trial court denied Kelley's motion to suppress without hearing any testimony.

Based on our review of the record, we are not persuaded by Kelley's arguments in this issue. The four corners of the search-warrant affidavit support a finding of probable

---

[3] The hearing on Kelley's motion to suppress occurred prior to opening statements in the trial.

cause. Specifically, the affidavit states that, based on information obtained from a confidential informant, Kelley, who is also known as "Wa-Ki," is involved in the distribution of crack cocaine from her house at 717 East Martin Luther King Boulevard in Bryan, Texas. In fact, within seventy-two hours of the application for the search warrant, as part of a "controlled buy," a confidential informant purchased 0.02 grams of crack cocaine from Kelley's boyfriend at Kelley's house. *See State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant.").

Further, the affidavit provides corroborating statements indicating that criminal activity was transpiring at Kelley's residence. In particular, Bryan Police received complaints about marihuana smells emanating from Kelley's residence, as well as "lots of traffic." *See Estrada v. State*, 154 S.W.3d 604, 608-09 (Tex. Crim. App. 2005) ("Though it is clear that odor alone may not justify a warrantless search, . . . the odor of an illegal substance may be a factor that police officers use in determining whether there is probable cause that an offense has been or is being committed."); *see also De La Cruz v. State*, No. 13-07-00722-CR, 2010 Tex. App. LEXIS 2336, at *6 (Tex. App.—Corpus Christi Apr. 1, 2010, no pet.) (mem. op., not designated for publication) (noting that the Corpus Christi Police Department characterizes a house as a "drug house" if, among other things,

the "word on the street" is that the residence is a "drug house" and that there is "stop and go traffic" at the house).  This information is indicia of a criminal drug enterprise.

And finally, the affidavit establishes that, at the time of the affidavit, the confidential informant has proven himself credible and reliable based on other cases that resulted in the issuance of multiple search warrants and felony arrests, as well as the confiscation of various drugs and U.S. currency.  *See Duarte*, 389 S.W.3d at 357 ("Confidential informants—even though culled from the 'criminal milieu'—may be considered reliable tipsters if they have a successful 'track record.'" (citing *Dixon v. State*, 206 S.W.3d 613, 616-17 (Tex. Crim. App. 2006); *Brown v. State*, 243 S.W.3d 141, 146 (Tex. App.—Eastland 2007, pet. ref'd)); *see also State v. Hill*, 299 S.W.3d 240, 244 (Tex. App.—Texarkana 2009, no pet.) ("Hearsay from unnamed informants may be credited by showing the informant has given reliable, credible information in the past." (citing *Torres v. State*, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977)); *Cerda v. State*, 846 S.W.2d 533, 535 (Tex. App.—Corpus Christi 1993, no pet.)).  Therefore, under the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found at Kelley's residence.  *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c); *see also Gates*, 462 U.S. at 238, 103 S. Ct. 2317; *Rodriguez*, 232 S.W.3d at 60.  Thus, we cannot say that the trial court erred by implicitly concluding that the affidavit supporting the search warrant established probable cause.

Additionally, we are not persuaded by Kelley's staleness argument. To justify a magistrate's finding that an affidavit established probable cause to issue a search warrant, the facts set out in the affidavit must not become stale when the warrant is issued. *Ex parte Jones*, 473 S.W.3d 850, 856 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Probable cause ceases to exist when, at the time the warrant is issued, it would be unreasonable to presume the items remain at the suspected place. *Id.* However, the amount of delay that will make information stale for purposes of a search warrant depends on the particular facts of the case, including the nature of the criminal activity and the type of evidence sought. *Lockett v. State*, 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). "'Mechanical count of days is of little assistance in this determination'" but rather common sense and reasonableness must prevail, with considerable deference given to the magistrate based on the facts before him, absent arbitrariness. *Id.* (quoting *Ellis v. State*, 722 S.W.2d 192, 196-97 (Tex. App.—Dallas 1986, no pet.)); *see, e.g., Ferguson v. State*, No. 10-14-00354-CR, 2016 Tex. App. LEXIS 12678, at *13 (Tex. App.—Waco Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication). In addition, when the affidavit properly recites facts indicating activity of a protracted and continuous nature—a course of conduct—the passage of time becomes less significant. *Ex parte Jones*, 473 S.W.3d at 856; *see Lockett*, 879 S.W.2d at 189; *see also Ferguson*, 2016 Tex. App. LEXIS 12678, at **13-14. Therefore, the proper method to determine whether facts supporting a search warrant have become stale is to examine, in

light of the type of criminal activity involved, the time elapsing between the occurrence of events set out in the affidavit and the time the search warrant was issued. *See Ex parte Jones*, 473 S.W.3d at 856; *see also Ferguson*, 2016 Tex. App. LEXIS 12678, at *14.

Here, the affidavit specifically stated that the controlled buy occurred within seventy-two hours, or three days, of the application for the search warrant. Though the failure to include specific dates and times of relevant events described in the affidavit in this case is not a model demonstration of the basis of the affiant's knowledge of circumstances suggesting a fair probability that contraband or evidence of a crime would be found in a particular place, the inclusion of the seventy-two hour language provided the magistrate with sufficient information to "ascertain from the affidavit the closeness of time of the event that is the basis for probable cause . . . ."[4] *Jones v. State*, 338 S.W.3d 725, 736 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

And perhaps more importantly, the search-warrant affidavit provided the magistrate with information supporting a conclusion that illegal "activity of a protracted and continuous nature" was ongoing at Kelley's residence and that this was not "a mere isolated violation." *McLain*, 337 S.W.3d at 274. Specifically, the affidavit mentioned the controlled buy, as well as previous complaints to the Bryan Police Department regarding marihuana smells emanating from the residence and increased traffic at the residence.

---

[4] Some vagueness is necessary to protect the identity of the confidential informant.

Furthermore, the affidavit notes that Kelly, otherwise known as "Wa-Ki" was known to be involved in the distribution of crack cocaine from her residence. This information established that Kelley's drug enterprise was an ongoing criminal activity that defeats a claim of staleness. *See State v. Cuong Phu Le*, 463 S.W.3d 872, 880 (Tex. Crim. App. 2015) ("As this Court observed in *Jones v. State*, 'evidence of ongoing criminal activity will generally defeat a claim of staleness.'" (quoting *Jones v. State*, 364 S.W.3d 854, 861 (Tex. Crim. App. 2012)); *see also Ex parte Jones*, 473 S.W.3d at 856; *Lockett*, 879 S.W.2d at 189. Therefore, based on the foregoing, we overrule Kelley's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In her second issue, Kelley asserts that the evidence supporting her conviction is insufficient to establish that she possessed a controlled substance with the intent to deliver. In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard enables the fact finder to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. In performing our sufficiency review, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact

finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) ("We resolve inconsistencies in the testimony in favor of the verdict."). Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

To prove unlawful possession of a controlled substance, the State was required to prove beyond a reasonable doubt that: (1) Kelley exercised control, management, or care over the substance; and (2) she knew that the matter possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Poindexter*, 153 S.W.3d at 405-06. This rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Id.* at 406. Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., links), may be sufficient to establish that element beyond a reasonable doubt. *Id.* Evidence which links the defendant to the

controlled substance suffices for proof that she possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Texas courts have considered the following non-exclusive list of factors in determining a link between the accused and contraband: (1) the contraband was in plain view; (2) the accused owned the premises or had the right to possess the place where the contraband was found; (3) the accused had a large amount of cash when found; (4) the accused's access to the contraband; (5) the accused's close proximity to the contraband; (6) there was a strong residual odor of the contraband; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was present on the accused or in plain view; (9) the accused was under the influence of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) conflicting statements about relevant matters were made by the occupants; (15) the accused made incriminating statements connecting herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *See Lopez v. State*, 267 S.W.3d 85, 92 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *see also Alexander v. State*, No. 10-12-00224-CR, 2013 Tex. App. LEXIS 9918, at **9-10 (Tex. App.—Waco Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication). It is not the number of links that is

dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

The elements for possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount charged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2016); *see also Erskine v. State*, 191 S.W.3d 374, 379 (Tex. App.—Waco 2006, no pet.) (citing *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). Intent to deliver may be establish by expert testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such as evidence of an accused's possession of the contraband. *See Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Patterson v. State*, 138 S.W.3d 643, 650 (Tex. App.—Dallas 2004, no pet.) (stating that "intent to deliver" can be proved by circumstantial evidence, such as the quantity of the drugs possessed, the manner of packaging, and the presence of the accused on the premises). Further, intent to deliver is a fact question for the trier of fact to resolve, and it may be inferred from the acts, words, or conduct of the accused. *See Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). "Finally, the control over the contraband need not be exclusive, but can be jointly exercised by more than one person." *Id.* (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985)).

Here, the record reflects that MDMA pills were found in a safe in the master bedroom.[5] Kelley admitted to Mahoney that she lived at the residence and that the master bedroom was her bedroom. Further, Kelley was present during the aforementioned controlled buy and subsequent search of the residence conducted by law enforcement. And during the search, law enforcement found multiple pieces of mail addressed to Kelley with the 717 East Martin Luther King Street address. Kelley also told Mahoney that Perry did not live at the house, but that he would only come over and stay a couple of days. Michelle Ann Kelley, Kelley's sister, confirmed that only Kelley and her daughter lived at the residence.

Mahoney testified that a digital scale was also found in the safe. According to Mahoney, the scale was used for weighing narcotics found inside the safe. In addition, law enforcement found other contraband in Kelley's bedroom. Specifically, officers found loose marihuana on top of the dresser, two bags of marihuana in the chest of drawers, and a marihuana grinder with marihuana residue inside.

Moreover, Kelley acknowledged that she was aware that the white pills were contraband and that she had gone with Perry to purchase marihuana and MDMA pills. According to Kelley, the MDMA pills were purchased for two dollars a pill. Mahoney

---

[5] Jeffrey Keverline with the Texas Department of Public Safety crime lab, controlled-substance section, testified that the white pills seized from Kelley's safe were 1-(3-trifluoromethylphenyl)piperazine. These pills were referred to as MDMA throughout trial. And according to Mahoney, MDMA pills are also known as XO pills.

testified that the purchase price provided by Kelley was significant because it corresponds with the bulk price for MDMA. Kelley also admitted: (1) being present when Perry packaged marihuana at the residence; and (2) that officers would find eight MDMA pills and other drug paraphernalia inside the safe. Kelley told Mahoney that everything inside the safe was hers, except for "the crack."

Finally, during cross-examination, Perry testified that Kelley knew he was selling drugs out of the residence. And though he recanted at trial, Perry acknowledged telling prosecutors under oath that he had seen Kelley "sell XOs, weed, and crack out of that house . . . ." Despite the absence of direct evidence showing that Kelley sold or intended to sell MDMA pills, Mahoney later explained that based on the totality of the circumstances, including the amount of drugs found inside Kelley's residence, Kelley was involved in the sale of drugs.

Viewing the evidence in the light most favorable to the verdict, and based on the logical force of all the circumstantial and direct evidence, a rational factfinder could conclude that Kelley's contact with the drugs in question was more than merely fortuitous. *See Poindexter*, 153 S.W.3d at 405-06; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 895; *Clayton*, 235 S.W.3d at 778. Indeed, the aforementioned evidence touches on many of the link factors listed in *Lopez*, *Lassaint*, and *Alexander*. *See Lopez*, 267 S.W.3d at 92; *Lassaint*, 79 S.W.3d at 740-41; *see also Alexander*, 2013 Tex. App. LEXIS 9918, at **9-10. And given this, we hold that a rational factfinder could have

concluded that Kelley exercised care, custody, and control over the 1-(3-trifluoromethylphenyl)piperazine in the amount charged and that she knew the substances were controlled substances. *See Blackman*, 350 S.W.3d at 594; *Poindexter*, 153 S.W.3d at 405.

Furthermore, based on the testimony of Mahoney, the admission by Perry that Kelley dealt "XOs, weed, and crack out of that house," and the circumstantial evidence, including the amount of 1-(3-trifluoromethylphenyl)piperazine seized, the price paid for the drugs, and the fact that Kelley had other drugs and drug paraphernalia used in the distribution of drugs in her residence, we hold that a rational factfinder could have concluded beyond a reasonable doubt that Kelley possessed a controlled substance with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Erskine*, 191 S.W.3d at 379; *Nhem*, 129 S.W.3d at 699; *see also Moreno*, 195 S.W.3d at 325; *Patterson*, 138 S.W.3d at 650. Therefore, we hold that the evidence is sufficient to support Kelley's conviction for possession of a controlled substance with intent to deliver in a drug-free zone.[6] We overrule her second issue.

## IV. CONCLUSION

Having overruled both of Kelley's issues on appeal, we affirm the judgment of the trial court.

---

[6] Kelley does not challenge the element pertaining to the drug-free zone, though the testimony established that Kelley's residence is about three blocks away from a day-care facility known as Big Top Learning Center.

                                          AL SCOGGINS
                                          Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed June 14, 2017
Do not publish
[CR25]

