Burley Clifton HARRYMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 49309.

Court of Criminal Appeals of Texas.

April 23, 1975.

Rehearing Denied May 21, 1975.

B. D. Moye and Bird Old, Jr., Mt. Pleasant, for appellant.

Henry Wade, Dist. Atty. and John H. Hagler, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the possession of heroin. Punishment was assessed at life.

The sufficiency of the evidence is not challenged. Appellant contends that his arrest was not based on probable cause, and therefore the evidence obtained from him was inadmissible.

Assuming the objection was sufficient, the legality of the arrest and the introduction of heroin found as a result of the subsequent search will be discussed.

Sandra Wood, assistant manager of the Oak Cliff Travel Lodge, testified that the guest in Room 30 was registered as Chuck Walter. They tried to locate him because he was behind in his rent. Miss Wood also testified that the employees at the motel never could find the guest but a lot of people were going in and out of the room. Upon his failure to pay the rent for several days, she, with another employee, entered the room and removed the clothing and personal effects. She also removed a rifle, two burnt spoons, pills, a large needle and a syringe. She put a "keeper key" on the door so that it could not be opened. After the door was locked, a woman called Miss Wood and asked why her husband's key to Room 30 would not work. Miss Wood told the woman that the rent had not been paid and "for him to come by the office." Miss Wood called the police. Officers Daugherty and Cummings responded to the call at about 8:00 p.m. on September 7, 1972. The officers saw what had been taken from the room. The officers received information from the National Crime Information Center that the rifle had been stolen in a Colorado burglary. They also checked the automobile license number listed on the motel check-in card. While Officer Daugherty was testifying, the following occurred:

"Q. (Prosecutor) Okay, let me ask you this, on her record there did she have a number to his car?

"A. Yes, and my partner was obtaining information on her records, like those people require. They had a Texas license number that was on the vehicle, sir. We ran a registration check on it and it came back, I believe, a 1960 model Ford registered to a car lot in Irving, sir.

"Q. Was that from the same car that he had registered with the motel or was it a different description?

"A. I believe it was a different car, sir, and a different model and everything."

Miss Wood had given the officers information on some six different matters such as theft calls about items stolen from the rooms and a call about a prowler. She was credible and reliable. The officers told Miss Wood that they were going off duty and they did not think the guest would return, but if he did, she should no-

tify the police. Appellant returned to the motel at approximately 4:15 a.m. on September 8, 1972. The police were called. Officers Raz and Conway responded to the call. At Miss Wood's request, one of the officers took appellant outside the lobby while the other officer talked to her. Miss Wood told them what the other officers had told her—that the rifle had been stolen in Colorado and that the license plates on the car listed on the registration card were stolen.

During the examination of Officer Raz, the following occurred:

"Q. And did you further learn that certain license plates on the person's car had been reported as stolen?

"A. Well, I found out that the license plates that were on the car when the man in question checked in were stolen.

"Q. As you were there, did you see that person she is referring to come in?

"A. He was in the place of business when I walked in.

"Q. Did she point him out to you?

"A. Yes, sir.

"Q. Was this the same man that she had indicated that had that stolen rifle with the scope?

"A. Yes, sir.

"Q. And the same one who had been registered with the stolen plates?

"A. Yes, sir."

The following also occurred during the examination of Officer Raz by the court:

"THE COURT: Okay. Now what else did she tell you besides what had been found?

"OFFICER RAZ: She told us that when he, the defendant, registered in, told us the name he used, Walter, and that he registered in with a certain Texas license plate, and that the officers that had been there previously had checked this license plate and found it had been stolen off a used car lot off a 1960 Ford in Irving, and that it was on this Pontiac."

The officers who went to the motel early in the evening testified that they learned the license plates were stolen.

The record further reflects the following:

"THE COURT: All right, you said Officer Conway searched him, right?

"OFFICER RAZ: Yes, sir, right.

"THE COURT: All right, now, who instructed him to search him, or did he take that upon himself?

"OFFICER RAZ: When I walked up to Officer Conway and the defendant, he wanted to know what was going on, the defendant did, and I told him that he was under arrest for investigation of theft and told Officer Conway to search him.

"THE COURT: All right, now you told Officer Conway to search him?

"THE WITNESS: Yes, sir.

"THE COURT: All right, what was your purpose at that time in having the defendant searched?

"THE WITNESS: Well, when they are under arrest we always try to check them, check them and check them out the best we can, try to get any weapons off of them, or knives, anything of that nature that would endanger us.

"THE COURT: All right, now what was your purpose in, not what you do all the time, but on this specific instance, what was your purpose to the search?

"THE WITNESS: For our safety.

"THE COURT: For weapons?

"THE WITNESS: Yes, sir."

Officer Conway testified that they searched him before putting him in the squad car:

"A. (Officer Conway) When my partner came out he said he was under arrest for investigation of theft— excuse me, yes, theft.

"Q. And did you have an occasion to search him at that time?

"A. My partner said to take him to the car and search him before I put him in the car, and I did.

" * * *

"A. When I was searching this man I had my hand on the inside of his waistband, going around, checking for weapons or razor blades and things like that, when I came to the small of his back there I felt a lump and I pulled that out and it was a condom tied in a knot and there were several others inside of that one, smaller ones inside of the larger one."

Appellant was not identified to the arresting officers until they arrived at about 4:15 in the morning shortly before his arrest. The other officers had been there at approximately 8:00 o'clock in the night. The officers who first checked with Miss Wood stated after the room had been locked that they did not think that the guest would return but if he did other officers on duty should be called.

 It appears that the officers had sufficient probable cause to believe that the license plates on the car driven by the occupant of Room 30 were stolen. The car had not been impounded by the officers. They had a right to arrest appellant for theft of the license plates.[1]

Under the circumstances of this case, the arrest was based upon probable cause.

The question is not could the officers have obtained an arrest warrant earlier, but, was the arrest unreasonable under the circumstances?

To hold otherwise would have permitted this appellant to have driven away, free from arrest, apparently in a stolen car or a car with stolen license plates just because the officers did not get an arrest warrant in the late hours of the night, between 8:00 at night and 4:15 o'clock the next morning. They had stated that they did not expect him to return.

Butler v. State, 151 Tex.Cr.R. 244, 208 S.W.2d 89 (1948), cited by appellant, is not in point. The burglary was committed on a Thursday night, the license number of Butler's car was obtained on Friday night and he was arrested at his home on Saturday night. Those facts are not close to the facts in the present case. The officers did not know appellant. They did not think he would return. They did not arrest him at his home.

The Supreme Court of the United States has not held such a search illegal. The language of Justice Powell of the Supreme Court of the United States in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed. 2d 54, (1975), should be noted. It is as follows:

"Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, *supra*, 379 U.S. [89, 91], at 96, 85 S.Ct. [223], at 228 [13 L.Ed.2d 142]; Wong Sun v. United States, 371 U.S. 471, 479–482, 83 S.Ct. 407, 412–414, 9 L. Ed.2d 441 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d

---

1. It is not necessary to discuss their right to arrest to prevent the consequences of theft.

726 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L. Ed. 1663 (1948)."

Next, appellant contends that reversible error was committed when Officer Conway searched him and discovered the heroin and asked, "What is this?" Appellant answered, "You know what it is. It is heroin."

■ An objection was made in a hearing outside the presence of the jury during the trial that the statement was inadmissible because he was under arrest and was not warned of his rights before it was made. The State urges that because the testimony came in during the trial without objection nothing is presented for review.

The objection was sufficient and appellant obtained an adverse ruling. Article 40.09, Section 6(d)(3), Vernon's Ann.C.C. P., provides:

"When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence shall be admitted, then in that event such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of such objections being renewed in the presence of the jury."

See Dion and Powers v. State, 456 S.W.2d 97 (Tex.Cr.App.1970). Cf. Brazzell v. State, 481 S.W.2d 130 (Tex.Cr.App.1972), which holds that a motion in limine some time prior to the trial could not be relied upon for review, and that an objection should be made when the evidence is offered at the trial.

■ The question presented: Did the trial court have sufficient facts to conclude that the statement was res gestae of the arrest?

Article 38.22, Section 1(f), V.A.C.C.P., provides:

"Nothing contained herein shall preclude the admissibility of any statement made by the defendant in open court at his trial or at his examining trial in compliance with Articles 16.03 and 16.04 or of any statement that is the res gestae of the arrest or of the offense."

In DeHart v. State, 468 S.W.2d 435, (Tex.Cr.App.1971), the arrest was for the murder of his father. An officer with a twelve-gauge shotgun told DeHart that he was under arrest, to put his hands up and drop his gun. DeHart dropped his pistol and asked if he could get dressed. The officer accompanied him to the bedroom and asked if he realized that his father was dead. And he replied: "'Yes, I know. I only wish it had been my mother.'" This Court held that this statement was res gestae of the arrest.

In Wright v. State, 440 S.W.2d 646 (Tex.Cr.App.1969), the accused had a gun in his hand. He was arrested and was asked, "Why did you shoot him?" He said that he was going to kill the s.o.b. This Court held that there was sufficient facts to conclude that the statement was admissible under the verbal acts doctrine and as res gestae of the arrest.

See Enriquez v. State, 501 S.W.2d 117 (Tex.Cr.App.1973), and Goodney v. State, 501 S.W.2d 311 (Tex.Cr.App.1973).

■ In determining whether statements are admissible as res gestae, each case must be considered on its own merits. Patterson v. State, 458 S.W.2d 658 (Tex. Cr.App.1970).

In Jones v. State, 458 S.W.2d 654 (Tex. Cr.App.1970), this Court, in part, held:

"If a statement is admissible as res gestae the fact that it is made in response to an inquiry, or while under arrest does not render the testimony inadmissible. Spann v. State, supra [448 S. W.2d 128]; Fowler v. State, 162 Tex. Cr.R. 513, 287 S.W.2d 665; Heath v. State, Tex.Cr.App., 375 S.W.2d 909."

See also Pilcher v. State, 503 S.W.2d 547 (Tex.Cr.App.1974); Tezeno v. State, 484

S.W.2d 374 (Tex.Cr.App.1972); Anderson v. State, 479 S.W.2d 57 (Tex.Cr.App. 1972); Moore v. State, 440 S.W.2d 643 (Tex.Cr.App.1969); Ramos v. State, 419 S.W.2d 359 (Tex.Cr.App.1967). Cf. Martinez v. State, 498 S.W.2d 938 (Tex.Cr. App.1973). See Hill v. State, 518 S.W.2d 810 (Tex.Cr.App.1975). Cf. Smith v. State, 507 S.W.2d 779 (Tex.Cr.App.1974).

The Court also stated in Jones:

" . . . acts and declarations which are a part of the res gestae are admissible notwithstanding the fact that they may not be admissible as confessions or admissions, for the rule of res gestae is independent of, superior to and cannot be limited by the rules relating to confessions or admissions after arrest. Spann v. State [Tex.Cr.App.], 448 S.W. 2d 128 and cases there cited. See also 24 Tex.Jur.2d 137, Sec. 600; Fisk v. State, Tex.Cr.App., 432 S.W.2d 912."

No reversible error is shown. The judgment is affirmed.

ROBERTS and ODOM, JJ., concur in the result.