NO. 07-00-0085-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JULY 21, 2003



______________________________




DOUGLAS WILLFRED MARCHAND, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NO. 9736; HONORABLE TOM NEELY, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN, J., and BOYD, S.J. (1)

MEMORANDUM OPINION


 We withdraw our prior opinion and substitute this opinion as the opinion of the
court. See Tex. R. App. P. 50. 

 Appellant Douglas Willfred Marchand appeals from his conviction and sentence of
95 years incarceration for possession of a controlled substance in an amount of 400 grams
or more, with intent to manufacture. We affirm.

BACKGROUND

 On August 3, 1999, Department of Public Safety narcotics investigator James
Brumley executed an affidavit pursuant to which a search warrant was issued for a house
located in rural Wilbarger County. Utilities at the residence were in the name of appellant
Douglas Willfred Marchand and his vehicle had been seen at the residence on multiple
occasions. The search warrant was for methamphetamine. When the warrant was
executed on August 3rd, appellant was outside the house and was detained. 
Methamphetamine and drug paraphernalia were found in the residence. After drugs and
paraphernalia were found in the house, appellant was arrested. He was indicted for
"intentionally or knowingly possess[ing], with intent to manufacture, a controlled substance,
namely, methamphetamine, in an amount of 400 grams or more." 

 Trial was to a jury in November, 1999. Appellant was convicted and the jury
assessed punishment at 95 years incarceration.

 Appellant seeks reversal of his conviction by ten issues. He challenges (in the
order presented by appellant) the (1) admission of evidence of extraneous offenses during
punishment phase of trial; (2) propriety of jury argument by the State during punishment
phase of trial; (3) validity of the affidavit underlying the search warrant pursuant to which
methamphetamine was found where he was arrested; (4) admissibility of oral statements
he made following his arrest; (5) failure of the trial court to include a lesser-included
charge in the jury charge; (6) sufficiency of the evidence; and (7) sufficiency of the
indictment to give adequate notice of the charge against him. We will address the issues
in the order presented by appellant.

ISSUE ONE: ADMISSION OF EVIDENCE OF EXTRANEOUS

OFFENSES AT PUNISHMENT PHASE OF TRIAL


 Issue number one asserts that the trial court improperly allowed evidence of
extraneous offenses into evidence during the punishment phase of trial. The evidence of
which he complains consists of two areas of testimony by James Hammonds: (1) appellant
had sold and delivered methamphetamine to Hammonds on May 20, 1999, and (2)
Hammonds delivered tanks of anhydrous ammonia to appellant on several occasions in
exchange for cash and methamphetamine. The State's position is that appellant did not
preserve error by timely objecting to the testimony, and that in any event the evidence was
admissible. 

 The prosecutor asked Hammonds if he was "busted" on May 20, 1999. Appellant
then objected that the State was about to offer evidence of an extraneous offense and that
"the prejudicial value outweighs any probative value." The trial court overruled the
objection, at which time Hammonds testified to having been arrested on May 20th and
charged with possession of methamphetamine because he had been under surveillance
at the time. He then was asked who he bought the drug from and he responded that the
purchase was from appellant. In due course, Hammonds testified that he had on several
occasions delivered tanks of anhydrous ammonia to appellant in exchange for
methamphetamine and cash. Appellant lodged no objections to Hammonds' testimony
except the one objection noted above that was made when Hammonds was first asked
about being arrested on May 20, 1999. 

 With two exceptions, a party must object each time inadmissible evidence is offered.
The first exception is a "continuous" or "running" objection. Such an objection will preserve
error for review so long as Tex. R. App. P. 33 (2) (and, thereby, Tex. R. Evid. 103) is complied
with. See Ethington v. State, 819 S.W.2d 854, 858-59 (Tex.Crim.App. 1991); Sattiewhite
v. State, 786 S.W.2d 271, 283-84 n.4 (Tex.Crim.App. 1989). The second exception is
when the trial court hears objections to offered evidence outside the presence of the jury
and rules that such evidence be admitted. Such objections will be deemed to apply to that
evidence when it is admitted before the jury without the necessity of repeating those
objections. Tex. R. Evid. 103(a)(1); see Ethington, 819 S.W.2d at 859.

 Appellant did not object either when Hammonds testified that he bought drugs from
appellant, or when he testified that he delivered anhydrous ammonia to appellant for drugs
and money. Appellant's only objection was voiced when Hammonds began to testify about
Hammonds' own arrest. Assuming, arguendo, that the evidence complained of was
inadmissible, appellant did not invoke either exception to the requirement that he object
each time the evidence was offered in order to preserve error. He failed to preserve error. 
See TRAP 33.1(a)(1). 

 Furthermore, even assuming, arguendo, that appellant's objection was sufficient to
preserve error, a judge is presumed to have engaged in a Rule 403 balancing test once
Rule 403 is invoked. See Williams v. State, 958 S.W.2d 186, 195-96 (Tex.Crim.App.
1997). A silent record as to the conduct of a balancing test does not evidence the trial
court's failure to perform the test. Id. 

 Appellant does not contend that the trial court abused its discretion in determining
that the extraneous offenses were relevant; he asserts that the trial court failed to conduct
a balancing test. He offers no authority, however, in contradiction of the Court of Criminal
Appeals' mandate that we presume the trial court conducted such a test. Id. We follow
the mandate of the Court of Criminal Appeals and so presume. 

 Appellant's first issue is overruled. 

ISSUES TWO AND THREE: IMPROPER JURY

ARGUMENT BY STATE


 Appellant's second and third issues complain of parts of the State's jury argument. 
Issue two urges that the prosecutor improperly focused his argument on extraneous
offense evidence. Appellant references Lomas v. State, 707 S.W.2d 566 (Tex.Crim.App.
1986), and Klueppel v. State, 505 S.W.2d 572 (Tex.Crim.App. 1974), for the proposition
that a prosecutor cannot argue for a jury to assess punishment based on the extraneous
offenses or bad acts proved during the punishment phase of trial. Issue three urges that
the prosecutor improperly referred to the parole laws by asking the jury to consider the
laws as instructed by the court in the charge, and keep appellant in custody as long as
they could by giving the maximum sentence. He cites Mendoza v. State, 840 S.W.2d 697
(Tex.App.--Corpus Christi 1992, no pet.). 

 Appellant did not object to the parts of the argument about which he now complains. 
In such case, he has failed to preserve error for review. See Cockrell v. State, 933 S.W.2d
73, 89 (Tex.Crim.App. 1996). We overrule issues two and three.

ISSUE FOUR: VALIDITY OF THE SEARCH WARRANT

 Appellant's fourth issue challenges the legality of the search warrant. He alleges
that the warrant was invalid because the affidavit on which it was based was insufficient
basis to establish probable cause. The bases for his assertion are that the information in
the affidavit was (1) stale, because some of the events described could have taken place
years before the date of the affidavit and warrant; (2) vague, because the facts recited in
the affidavit were not updated or corroborated just prior to its execution and issuance of
the search warrant; and (3) unreliable, because facts in the affidavit do not show reliability
of the confidential informant, and because the affidavit sets out that prior reliable
information had been received "for" the informant, not "from" the informant. 

 A search warrant may not be issued unless sufficient facts are presented to a
magistrate which permit him to conclude that probable cause exists supporting the
warrant's issuance. See Tex. Crim. Proc. Code Ann. art. 18.01(b) (Vernon Supp. 2000); (3)
Taylor v. State, 54 S.W.3d 21, 24 (Tex.App.--Amarillo 2001, no pet.). The facts must be
contained in a "sworn affidavit" accompanying the application for the warrant and illustrate
that (1) a specific offense was committed, (2) the specifically described property or items
to be sought and seized constitute evidence of that offense or evidence that a particular
person committed the offense, and (3) the property or items in question are located at or
on the particular person, place or thing to be searched. CCP art. 18.01(c); Taylor, 54
S.W.3d at 24. Whether the facts set out in an affidavit are adequate to establish probable
cause depends on the totality of the circumstances. See Ramos v. State, 934 S.W.2d 358,
362-63 (Tex.Crim.App. 1996). The facts do so when the facts in the affidavit are sufficient
basis for the magistrate to reasonably conclude that there is a fair probability that
contraband or evidence of a crime will be found in a particular place. See Illinois v. Gates,
462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The magistrate may
draw reasonable inferences from facts and circumstances alleged in the affidavit. See
Ramos, 934 S.W.2d at 363. When the dispute is over the existence of probable cause to
support the magistrate's decision to issue the search warrant, our review is restricted to
the four corners of the affidavit accompanying the request for the warrant. See Oubre v.
State, 542 S.W.2d 875, 877 (Tex.Crim.App. 1976).

 To justify a magistrate's finding that an affidavit is sufficient to establish probable
cause to issue a search warrant, the facts set out in the affidavit must not have become
stale when the magistrate issues the search warrant. See Rowell v. State, 14 S.W.3d 806,
809 (Tex.App.--Houston [1st Dist.] 2000), aff'd, 66 S.W.3d 279 (Tex.Crim.App. 2001);
Guerra v. State, 860 S.W.2d 609, 611 (Tex.App.--Corpus Christi 1993, pet. ref'd). To
determine whether the facts supporting a search warrant have become stale, we examine,
in light of the type of criminal activity involved, the time elapsing between the occurrence
of the events set out in the affidavit and the time the search warrant was issued. See
Rowell, 14 S.W.3d at 809. When the affidavit recites facts indicating activity of a
protracted and continuous nature or a course of conduct, the passage of time becomes
less significant. Id.; Lockett v. State, 879 S.W.2d 184, 189 (Tex.App.--Houston [14th Dist.]
1994, pet. ref'd).

 The standard of review for a trial court's ruling on a motion to suppress is abuse of
discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). In
conducting our review, we give almost total deference to the trial court's determination of
historical facts, especially to the extent the determination is founded on credibility and
demeanor of witnesses, but we review the court's application of search and seizure law de
novo. See Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Appellate
review of an affidavit in support of a search warrant is not de novo, but rather, great
deference is given to the magistrate's determination of probable cause. See Gates, 462
U.S. at 236, 103 S.Ct. at 2331. 

 The challenged affidavit details (1) the precise address and location of the
residence in question; (2) information in the affidavit which was provided by a confidential
informant who had previously provided credible information to the Department of Public
Safety (DPS) officer making the affidavit; (3) facts corroborating part of the information
provided by the informant; (4) the length of the affiant's investigation of appellant as over
three months and facts substantiating appellant's having occupied the residence for over
10 months; (5) that appellant's girlfriend, who also lived in the residence, "is" purchasing
an average amount of $300 per week of lithium batteries and actifed, which the affiant
knows by experience are components for manufacturing methamphetamine, along with
anhydrous ammonia and other substances; and (6) appellant's vehicle was parked at the
residence at the time the affidavit was executed at 5:00 p.m. on August 3, 1999. 
Information detailed, as received from the informant, included information that: (1) the
informant "purchases" and has received actual transfer of amphetamine and
methamphetamine from appellant, and specified May 20, 1999 as one purchase date; (2)
the informant communicates with appellant via a pager to arrange purchases of
methamphetamine; (3) the informant would arrange with appellant for methamphetamine
purchases from appellant by appellant's leaving the methamphetamine at a pre-determined
location in the vicinity of the residence where the informant would pick the drugs up; (4)
the informant had delivered five-gallon tanks containing anhydrous ammonia to appellant
at the residence in exchange for payment from appellant; (5) appellant had previously told
the informant that appellant manufactured large amounts of methamphetamine; and (6) all
of the occurrences detailed by the informant had occurred in the past six months.

 In Lockett, the affiant was a federal officer who had engaged in a several-month
investigation of Lockett for being a felon in possession of firearms. The affidavit
underlying the search warrant for firearms was signed on March 12, 1991, and was
executed on March 15th. The affidavit specified information by informants who had seen
firearms in Lockett's house in the latter months of 1990, and in one instance at some
unspecified times during the last three months before the affidavit was executed. The
Lockett court concluded that the affidavit was not based on stale information because the
magistrate could have concluded that Lockett had been in possession of firearms over an
extended period of time which continued until the time the warrant was issued. See 
Lockett, 879 S.W.2d at 189. 

 The affidavit before us contains facts and results of an investigation from which a
magistrate could conclude that an extended course of conduct involving manufacturing and
selling of amphetamines was centered in appellant's house. The affidavit used language
indicating both past and current activities which were continuing at the time the affidavit
was executed. We conclude that a magistrate could have reasonably concluded that there
was a fair probability that methamphetamine would be found in the residence. See Gates,
462 U.S. at 238, 103 S.Ct. at 2332. 

 As to reliability of information from the informant, the affidavit sets out that the
affiant had previously received credible information from the informant, parts of the
informant's information was independently corroborated through the Vernon police
department and the informant identified appellant and his girlfriend from recent
photographs produced by the affiant. 

 An informant's credibility is but one factor to be weighed in considering the totality
of the circumstances as to whether the magistrate could have determined the existence
of probable cause to believe that contraband or evidence was located in a particular place. 
See Gates, 462 U.S. at 232-33, 103 S.Ct. at 2329-30; Ramos, 934 S.W.2d at 362-63;
State v. Ozuna, 88 S.W.3d 307, 310 (Tex.App.--San Antonio 2002, pet. ref'd). Giving due
deference to the magistrate's decisions that reliability of the informant was sufficiently
shown and that the totality of the circumstances yielded a fair probability that
methamphetamine would be found in the residence, we conclude that the magistrate's
discretion was not abused in relying on the affidavit and the informant's information
included therein. 

 As to appellant's assertion that the word "for" in the affidavit renders the affidavit
unreliable, we note that the magistrate's task in evaluating an affidavit is to make practical
common sense decisions. See Hennessy v. State, 660 S.W.2d 87, 89 (Tex.Crim.App.
1983). No testimony was offered at the suppression hearing in the trial court. Thus,
questions of credibility and demeanor of witnesses do not insert themselves into our
evaluation of the trial court's ruling, and we will consider the magistrate's determination
using the de novo standard of review, but giving great deference to the magistrate's
determination of probable cause. See Lane v. State, 971 S.W.2d 748, 751-52
(Tex.App.-Dallas 1998, pet. ref'd). 

 Given the context of and purpose for the statement being made in the probable
cause affidavit as a whole, the possible typographical error in the affidavit wherein the
affiant sets out that he has received credible information in the past "for" the informant, the
magistrate, in using a common-sense approach, could reasonably have concluded that the
word "for" was a typographical error and that the word intended was "from." See Olivarri
v. State, 838 S.W.2d 902, 905 (Tex.App.--Corpus Christi 1992, no pet.). We defer to such
determination, as did the trial court. The trial court did not err in failing to grant appellant's
motion to suppress. We overrule issue four. ISSUES FIVE AND SIX: ORAL STATEMENTS 

BY APPELLANT AFTER ARREST


 Appellant was outside when officers executing the search warrant approached the
house to be searched. He was detained while officers searched the house. In the house
officers found what appeared to be quantities of methamphetamine, drug paraphernalia,
and equipment and supplies consistent with a methamphetamine manufacturing operation. 
Appellant was then placed under arrest and given Miranda (4) warnings. Following his
arrest, appellant made oral statements which the State offered and the trial court admitted
at trial. The exact points at which the statements were made are not clear from the record. 
The statements were unquestionably made (1) during the time the officers were completing
the search of the house and securing evidence they found; (2) after appellant had been
arrested and given Miranda warnings (5); and (3) without having been recorded or
videotaped. 

 The first statement was, "I knew sooner or later this was bound to happen." The
next was, "Handle the tanks with anhydrous carefully. They will be okay." The third was,
"Don't spill the liquid from the glass vase located in the front room." The last was in regard
to some glass jars containing liquid, "You might as well put them with everything else that
tested positive." 

 By his issues numbers five and six, appellant asserts that the oral statements
should have been excluded from evidence because (1) they were the product of a search
and seizure based on an illegal search warrant, (2) the provisions of CCP article 38.22
were not complied with, and (3) since article 38.22 was not complied with, the statements
could only have been admitted as res gestae statements, and they did not qualify as such. 
Appellant asserts that his statements were not in the nature of excited utterances, he was
not emotionally stimulated, or in the grip of any shocking event, and relies on Smith v.
State, 514 S.W.2d 749 (Tex.Crim.App. 1974). 

 The State asserts that the statements are res gestae of the arrest and offense, and
are admissible under article 38.22 § 5. The State refers us to Etheridge v. State, 903
S.W.2d 1 (Tex.Crim.App. 1994). 

 We have previously determined that the search warrant was valid. Thus,
appellant's allegation that the trial court erred in refusing to exclude the statements as the
product of an illegal search is without merit.

 Article 38.22 § 5 provides:

 Nothing in this article precludes the admission of a statement made by the
accused . . . that is the res gestae of the arrest or of the offense, . . . .

 In Smith, officers were in the process of searching a residence pursuant to a search
warrant when Smith entered the house. Smith was arrested and given Miranda warnings. 
Approximately 10-15 minutes later, one of the officers showed Smith a bag found under
a bed mattress and asked Smith what it was. Smith responded that it was his and was
"stuff," which was interpreted at trial to indicate heroin. The Court of Criminal Appeals held
that Smith's statements were not admissible as res gestae statements. In so holding, the
Court noted that the statements were not made spontaneously, were in answer to
questioning by an officer some 10-15 minutes after the arrest, and the record was silent
as to whether Smith was in a condition of excitement, emotional stimulation or in the grip
of any shocking event. See Smith, 514 S.W.2d at 753. Etheridge, relied on by the State,
distinguished Smith on the facts in determining that defendant's post-arrest confession was
admissible. In Etheridge, the record contained evidence that the defendant was in an
emotional state when he made the post-arrest confession to having killed the victim. See
Etheridge, 903 S.W.2d at 15.

 Statements by defendants which are classified as res gestae statements can be
either statements (1) made while a defendant is in an emotional, excited state or in the
throes of a shocking event or (2) statements which are described as verbal acts. See
Ramos v. State, 419 S.W.2d 359, 362-64 (Tex.Crim.App. 1967) (statement admissible
under verbal act doctrine "sometimes referred to as the so-called res gestae rule"). In
Jones v. State, 458 S.W.2d 654 (Tex.Crim.App. 1970), the appellant was a passenger in
a vehicle which was stopped because of the driver's possible intoxication. During the stop,
Jones exited the vehicle and was interrogated by officers concerning a bottle of pills found
in the glove compartment. Appellant made statements that he and the driver had
purchased the pills in Mexico. The Court of Criminal Appeals held that even in the
absence of a showing of spontaneity to justify admission under the "true res gestae rule,"
the statements were admissible under the verbal act doctrine, or "so-called" res gestae
rule. Id. at 656. And, in Harryman v. State, 522 S.W.2d 512 (Tex.Crim.App. 1975),
Harryman was arrested and searched for weapons. During the search, a condom tied in
a knot and containing several smaller condoms was discovered inside his belt. The
searching officer asked Harryman, "What is this?", to which he replied that it was heroin. 
Citing CCP 38.22, Jones, and other precedent, and without discussion of whether the
record contained evidence of Harryman's state of mind or the spontaneity of the statement,
the Court of Criminal Appeals held that admission of the statement as res gestae of the
arrest was not reversible error. Harryman, 522 S.W.2d at 516-17.

 The trial court could have, within its discretion, determined that appellant's first
statement ("I knew sooner or later this was bound to happen.") was res gestae of the
arrest. Admission of the statement was not an abuse of discretion. Even if appellant's first
statement was admitted in error, however, after examining the record as a whole and in
a neutral light, we conclude that its admission was harmless. See TRAP 44.2(b); Johnson
v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). 

 We need not decide if the remainder of appellant's statements were admissible as
either true res gestae or verbal act res gestae. The trial court's action in admitting
evidence is not error if the evidence is admissible for any purpose, regardless of the
reason for admitting the evidence. See Sewell v. State, 629 S.W.2d 42, 45 (Tex.Crim.App.
1982). CCP 38.22 § 3(c) provides that § 3(a) does not apply to preclude admission of a
statement which contains assertions of facts or circumstances that are found to be true and
which conduce to establish the guilt of the accused. The provisions of § 3(c) do not limit
the manner in which the facts asserted are found to be true. See Briddle v. State, 742
S.W.2d 379, 388 (Tex.Crim.App. 1987). Subsequent corroboration suffices. See Port v.
State, 791 S.W.2d 103, 107 (Tex.Crim.App. 1990). If one of multiple assertions in the
statement is found to be true and conduces to show the guilt of the accused, then the
statement in its entirety is admissible. Id. 

 With the exception of the first statement complained of by appellant ("I knew sooner
or later this was bound to happen."), the statements dealt with factual matters concerning
contents of drug paraphernalia found by the officers in the house being searched. The
statements described the contents of tanks as anhydrous ammonia; described the contents
of a glass vase in the front room as a liquid; and effectively stated that the contents of
glass jars would test "positive." All three statements later proved to be factually correct
and conduced with other evidence to prove appellant's guilt of the crime charged. The trial
court did not abuse its discretion in admitting the statements. See id. 

 We overrule issues five and six. 

ISSUE SEVEN: LESSER-INCLUDED OFFENSE CHARGE 

 Appellant's seventh issue urges that the trial court erred in denying his requested
lesser-included charge for possession of only 200-400 grams of methamphetamine. In
presenting his issue, he references testimony of his chemist expert Courtney as to how
much methamphetamine would be produced if ". . . you took the chemicals in [exhibits] 6,
7 and 8 in the stage that they are right now and went to the final product . . . ." Courtney
estimated that the methamphetamine finally produced from the exhibits, were it processed
to completion, would probably be "around-somewhere around half of [400 grams]."

 The State counters that the testimony referenced by appellant is no evidence of
weight of the controlled substance which appellant was indicted for possessing because
the substance appellant possessed was not in final form, but was a mixture, solution or
other substance containing the controlled substance. As such, the statute defined
"controlled substance" as the aggregate weight of the entire liquid containing
methamphetamine as well as the methamphetamine in solution. Further, the State urges
that the error, if any, was harmless because the punishment range for possession of 400
grams or more is 25 years to life and the punishment range for possession of 200-400
grams is 10 years to life. The State reasons that since appellant was sentenced to 95
years incarceration, conviction of the lesser offense of 200-400 grams would not have
resulted in a lesser sentence. 

 To determine if a defendant is entitled to a lesser-included offense instruction, a two
prong test applies: (1) the lesser-included offense must be included within the proof
necessary to establish the offense charged, and (2) some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is guilty, he is guilty
only of the lesser-included offense. See Lofton v. State, 45 S.W.3d 649, 651
(Tex.Crim.App. 2001); Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000). 

 The State is correct that Courtney's testimony is no evidence that appellant
possessed only 200-400 grams of controlled substance. The testimony referred to was
a hypothetical question based on different facts from those in evidence. The hypothetical
asked Courtney to assume a change in the composition and weight of the substance in
appellant's possession based on "cooking" of the substances beyond the stage in which
they were found during the search. Because there is no evidence which would have
permitted the jury to rationally find that appellant was guilty only of possessing 200-400
grams of methamphetamine, the trial court did not err in refusing to charge the jury on a
lesser-included offense. We also agree with the State that even if refusal to charge the
jury on the lesser offense was error, the error was harmless given the punishment
assessed by the jury. See TRAP 44.2(b). ISSUE EIGHT: SUFFICIENCY OF EVIDENCE

OF WEIGHT OF METHAMPHETAMINE


 Issue eight challenges the legal sufficiency of the evidence that appellant
possessed 400 or more grams of methamphetamine. He relies on various authorities,
including Cawthon v. State, 849 S.W.2d 346 (Tex.Crim.App. 1992), to support his
assertion that the State failed to prove the weight of the methamphetamine which appellant
was charged with possessing. He posits that the State's proof was insufficient because
it did not prove the weight of the actual methamphetamine and the weight of the other
substances in which the drug was found or with which it was mixed. The State responds
that Cawthon is inapplicable because the statute under which appellant was convicted had
been amended and differed from that under consideration in Cawthon, and because the
definition of "controlled substance" under which appellant was charged did not require
proof of the separate weights of the methamphetamine and any dilutants or other
substances with which the methamphetamine was mixed. We agree with the State. 

 Under Cawthon, the State was required to prove that an adulterant or dilutant added
to the illegal substance (methamphetamine), with intent to increase the quantity, did not
affect the activity of the illegal substance. The statute under which appellant was
convicted is not so formulated as was the statute under consideration in Cawthon. At the
time of appellant's indictment, the definition of "controlled substance" included a drug, an
adulterant, a dilutant, and an immediate precursor, see Tex. Health & Safety Code Ann.
§ 481.002(5) (Vernon 2003), and "adulterant or dilutant" was defined by the statute as any
material that increases the bulk or quantity of a controlled substance, regardless of its
effect on the chemical activity of the controlled substance. Tex. Health & Safety Code
§ 481.002(49) (Vernon 2003). Cawthon is inapposite to the matter before us. 

 As an appellate court reviewing a challenge to the legal sufficiency of the evidence,
we consider all the record evidence, including direct and circumstantial, both admissible
and inadmissible, in the light most favorable to the jury's verdict. We then determine if any
rational jury could have found all the essential elements of the offense beyond a
reasonable doubt based upon such record evidence. See Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing court is to presume
that the evidence is legally sufficient to support the jury verdict. See Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000). 

 Both the State and appellant presented chemist witnesses who testified to the
weight and composition of the methamphetamine, mixtures of liquids containing
methamphetamine, and precursors of methamphetamine seized from the house searched
when appellant was arrested. The chemists' testimony was in agreement that the weight
of powder, liquids containing some levels of methamphetamine and precursors of
methamphetamine exceeded 400 grams. Appellant argues that the weight of pure
methamphetamine without any dilutants or adulterants (i.e., with the chemicals and some
or all of the dilutants and adulterants removed by further processing of the mixtures) would
have been less than 400 grams. (6) 

 Under the statutory definition, which the trial court included in the jury charge, the
State did not have to prove that the amount of "pure" methamphetamine was 400 grams
or more, or that dilutants did not affect the chemical activity of the methamphetamine. The
evidence was legally sufficient to support a jury finding that the amount of controlled
substance in question was 400 grams or more. We overrule issue eight. 
 

ISSUE NINE: ALLOWING STATE TO EXPAND 

INDICTMENT VIA THE JURY CHARGE


 By his issue nine, appellant complains that the jury charge allowed the State to
expand the scope of the crime for which the jury could convict appellant from the crime
charged in the indictment. His objection at trial was that the charge defined "controlled
substance" as including the aggregate weight of any mixtures, solution or other substance
contained in a controlled substance, while the indictment only indicted for possession of
methamphetamine. 

 As previously noted, appellant was indicted for "intentionally or knowingly
possess[ing], with intent to manufacture, a controlled substance, namely,
methamphetamine, in an amount of 400 grams or more." See Tex. Health & Safety Code
§§ 481.112, 124 (Vernon 2003). The jury was charged in accordance with the language
of the indictment and found appellant guilty of "possession of a controlled substance,
methamphetamine in an amount of 400 grams or more, with intent to manufacture, as
alleged in the indictment." The jury was instructed, in part, that (1) methamphetamine was
a controlled substance and (2) "'controlled substance' means a substance, including a
drug, an adulterant, a dilutant, and an immediate precursor. The term includes the
aggregate weight of any mixture, solution, or other substance containing a controlled
substance." The definition of controlled substance conformed to the statutory definition.

 Appellant cites no authority for his position other than general authority for the
proposition that the jury charge should not enlarge the crime pled in the indictment. In
regard to such position he references Garcia v. State, 640 S.W.2d 939 (Tex.Crim.App.
1982). 

 Under the record before us, appellant's reliance on Garcia is misplaced. In Garcia,
the defendant was charged with hindering an arrest "intentionally with intent to hinder" the
arrest. The jury was charged to find the defendant guilty if the defendant "knowingly or
intentionally" hindered the arrest. The jury charge was held to have been defective in two
ways for allowing the defendant to be convicted for knowingly or intentionally hindering the
arrest: (1) the inclusion of "knowingly" resulted in the jury charge allowing conviction for
acts which were not a crime under the statute which proscribed only actions taken with
intent to hinder an arrest; and (2) the jury charge allowed conviction for a "knowingly"
mens rea which was not included in the indictment. Id. at 941. 

 By his issue, appellant does not urge that the charge allowed conviction for actions
which were not a crime. Neither does he claim that the definition of controlled substance
did not conform to the statute nor that the instruction that the weight of the substance
included the aggregate weight of any mixture, solution or other substances containing a
controlled substance was erroneous. Appellant's written Exception To Form of Indictment
stated that he was charged by indictment "with the offense of Possession with Intent to
Manufacture a Controlled Substance." The exception urged that the indictment failed to
specify what he "possessed with the intent to manufacture a controlled substance, to wit;
methamphetamine [sic]". At the pre-trial presentation of the exception, the State
responded to appellant's exception argument by specifying that the indictment specified,
and the State's proof would be, that appellant possessed two different substances which
comprised methamphetamine: (1) the finished product, and (2) product that was still in the
process of being manufactured, which was not finished, but which nevertheless contained
methamphetamine. The charge did not enlarge the indictment. Issue nine is overruled. 

ISSUE TEN: SUFFICIENCY OF THE INDICTMENT

 Issue ten asserts that the trial court erred in failing to quash the indictment or to
dismiss the charges against appellant because the language of the indictment did not give
him sufficient notice of the charge against him. He claims that the indictment language
that he "intentionally or knowingly possess[ed], with intent to manufacture, a controlled
substance, namely, methamphetamine, in an amount of 400 grams or more" did not give
him adequate notice to prepare his defense to the State's proof that the weight of the
methamphetamine included adulterants and dilutants. He alleges that, had he been on
notice that the State was going to prove the weight of the methamphetamine, including
dilutants and adulterants, his entire trial strategy would have been different. 

 Appellant's written Exception to Form of Indictment was filed on the morning the
case was to go to trial. The written Exception specified that the indictment failed to allege
what substances appellant possessed with the intent to manufacture a controlled
substance, to wit: methamphetamine. When presenting the written Exception to the
indictment at a pre-trial hearing, trial counsel did not assert that the indictment did not give
notice of the weight of methamphetamine in question or how the weight was to be
calculated. Rather, the presentation made to the trial court conformed to the written
pleading: the indictment did not state what materials were possessed out of which
appellant was allegedly going to manufacture methamphetamine. 

 To preserve error for appellate review, the issue on appeal must correspond to the
objection made at trial. See Dixon v. State, 2 S.W.3d 263, 265 (Tex.Crim.App. 1998). 
Appellant's complaint on appeal does not conform to his written exception or to the
objection presented to the trial court. 

 Moreover, appellant offers no reference to record evidence supporting the assertion
that his trial strategy would have been different. An appellant urging harm from a trial
court's error does not have the burden to prove harm from the error. See Ovalle v. State,
13 S.W.3d 774, 787 (Tex.Crim.App. 2000). Rather, the appellant is required only to
suggest, in light of the record, how prejudice may have occurred. Id. At that point, the
reviewing court must make its determination as to what effect, if any, the error had. Id. 
Appellant does not point out, nor does our review of the record reveal, evidence that
appellant was harmed by the indictment's language. See TRAP 44.2. 

 Appellant's issue ten is overruled. 

CONCLUSION

 Having overruled appellant's issues, we affirm the judgment of the trial court. 

 

 Phil Johnson

 Chief Justice




Do not publish. 




1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. Further reference to a Rule of Appellate Procedure will be by reference to "TRAP
____."
3. Further reference to the Code of Criminal Procedure will be as "CCP ___." 
4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966).
5. See Robertson v. State, 871 S.W.2d 701, 714 (Tex.Crim.App. 1993) for the
requirement as to Miranda warnings when statements are offered as res gestae. 
6. Because of our disposition of appellant's issue, we need not consider the weight
of any precursors to methamphetamine which were found.