NO. 07-00-0085-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 21, 2003

_____

DOUGLAS WILLFRED MARCHAND, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 9736; HONORABLE TOM NEELY, JUDGE

_____

Before JOHNSON, C.J., and QUINN, J., and BOYD, S.J.[1]

MEMORANDUM OPINION

We withdraw our prior opinion and substitute this opinion as the opinion of the court. See TEX. R. APP. P. 50.

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Appellant Douglas Willfred Marchand appeals from his conviction and sentence of 95 years incarceration for possession of a controlled substance in an amount of 400 grams or more, with intent to manufacture. We affirm.

## BACKGROUND

On August 3, 1999, Department of Public Safety narcotics investigator James Brumley executed an affidavit pursuant to which a search warrant was issued for a house located in rural Wilbarger County. Utilities at the residence were in the name of appellant Douglas Willfred Marchand and his vehicle had been seen at the residence on multiple occasions. The search warrant was for methamphetamine. When the warrant was executed on August 3rd, appellant was outside the house and was detained. Methamphetamine and drug paraphernalia were found in the residence. After drugs and paraphernalia were found in the house, appellant was arrested. He was indicted for "intentionally or knowingly possess[ing], with intent to manufacture, a controlled substance, namely, methamphetamine, in an amount of 400 grams or more."

Trial was to a jury in November, 1999. Appellant was convicted and the jury assessed punishment at 95 years incarceration.

Appellant seeks reversal of his conviction by ten issues. He challenges (in the order presented by appellant) the (1) admission of evidence of extraneous offenses during punishment phase of trial; (2) propriety of jury argument by the State during punishment phase of trial; (3) validity of the affidavit underlying the search warrant pursuant to which

2

methamphetamine was found where he was arrested; (4) admissibility of oral statements he made following his arrest; (5) failure of the trial court to include a lesser-included charge in the jury charge; (6) sufficiency of the evidence; and (7) sufficiency of the indictment to give adequate notice of the charge against him. We will address the issues in the order presented by appellant.

## ISSUE ONE: ADMISSION OF EVIDENCE OF EXTRANEOUS OFFENSES AT PUNISHMENT PHASE OF TRIAL

Issue number one asserts that the trial court improperly allowed evidence of extraneous offenses into evidence during the punishment phase of trial. The evidence of which he complains consists of two areas of testimony by James Hammonds: (1) appellant had sold and delivered methamphetamine to Hammonds on May 20, 1999, and (2) Hammonds delivered tanks of anhydrous ammonia to appellant on several occasions in exchange for cash and methamphetamine. The State's position is that appellant did not preserve error by timely objecting to the testimony, and that in any event the evidence was admissible.

The prosecutor asked Hammonds if he was "busted" on May 20, 1999. Appellant then objected that the State was about to offer evidence of an extraneous offense and that "the prejudicial value outweighs any probative value." The trial court overruled the objection, at which time Hammonds testified to having been arrested on May 20th and charged with possession of methamphetamine because he had been under surveillance at the time. He then was asked who he bought the drug from and he responded that the

3

purchase was from appellant. In due course, Hammonds testified that he had on several occasions delivered tanks of anhydrous ammonia to appellant in exchange for methamphetamine and cash. Appellant lodged no objections to Hammonds' testimony except the one objection noted above that was made when Hammonds was first asked about being arrested on May 20, 1999.

With two exceptions, a party must object each time inadmissible evidence is offered. The first exception is a "continuous" or "running" objection. Such an objection will preserve error for review so long as TEX. R. APP. P. 33[2] (and, thereby, TEX. R. EVID. 103) is complied with. See Ethington v. State, 819 S.W.2d 854, 858-59 (Tex.Crim.App. 1991); Sattiewhite v. State, 786 S.W.2d 271, 283-84 n.4 (Tex.Crim.App. 1989). The second exception is when the trial court hears objections to offered evidence outside the presence of the jury and rules that such evidence be admitted. Such objections will be deemed to apply to that evidence when it is admitted before the jury without the necessity of repeating those objections. TEX. R. EVID. 103(a)(1); see Ethington, 819 S.W.2d at 859.

Appellant did not object either when Hammonds testified that he bought drugs from appellant, or when he testified that he delivered anhydrous ammonia to appellant for drugs and money. Appellant's only objection was voiced when Hammonds began to testify about Hammonds' own arrest. Assuming, *arguendo*, that the evidence complained of was inadmissible, appellant did not invoke either exception to the requirement that he object

---

[2]Further reference to a Rule of Appellate Procedure will be by reference to "TRAP ____."

4

each time the evidence was offered in order to preserve error. He failed to preserve error. See TRAP 33.1(a)(1).

Furthermore, even assuming, *arguendo*, that appellant's objection was sufficient to preserve error, a judge is presumed to have engaged in a Rule 403 balancing test once Rule 403 is invoked. See Williams v. State, 958 S.W.2d 186, 195-96 (Tex.Crim.App. 1997). A silent record as to the conduct of a balancing test does not evidence the trial court's failure to perform the test. Id.

Appellant does not contend that the trial court abused its discretion in determining that the extraneous offenses were relevant; he asserts that the trial court failed to conduct a balancing test. He offers no authority, however, in contradiction of the Court of Criminal Appeals' mandate that we presume the trial court conducted such a test. Id. We follow the mandate of the Court of Criminal Appeals and so presume.

Appellant's first issue is overruled.

### ISSUES TWO AND THREE: IMPROPER JURY ARGUMENT BY STATE

Appellant's second and third issues complain of parts of the State's jury argument. Issue two urges that the prosecutor improperly focused his argument on extraneous offense evidence. Appellant references Lomas v. State, 707 S.W.2d 566 (Tex.Crim.App. 1986), and Klueppel v. State, 505 S.W.2d 572 (Tex.Crim.App. 1974), for the proposition that a prosecutor cannot argue for a jury to assess punishment based on the extraneous

offenses or bad acts proved during the punishment phase of trial.  Issue three urges that the prosecutor improperly referred to the parole laws by asking the jury to consider the laws as instructed by the court in the charge, and keep appellant in custody as long as they could by giving the maximum sentence.  He cites Mendoza v. State, 840 S.W.2d 697 (Tex.App.--Corpus Christi 1992, no pet.).

Appellant did not object to the parts of the argument about which he now complains.  In such case, he has failed to preserve error for review.  See Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996).  We overrule issues two and three.

### ISSUE FOUR:  VALIDITY OF THE SEARCH WARRANT

Appellant's fourth issue challenges the legality of the search warrant.  He alleges that the warrant was invalid because the affidavit on which it was based was insufficient basis to establish probable cause.  The bases for his assertion are that the information in the affidavit was (1) stale, because some of the events described could have taken place years before the date of the affidavit and warrant; (2) vague, because the facts recited in the affidavit were not updated or corroborated just prior to its execution and issuance of the search warrant; and (3) unreliable, because facts in the affidavit do not show reliability of the confidential informant, and because the affidavit sets out that prior reliable information had been received "for" the informant, not "from" the informant.

A search warrant may not be issued unless sufficient facts are presented to a magistrate which permit him to conclude that probable cause exists supporting the

6

warrant's issuance.  See TEX. CRIM. PROC. CODE ANN. art. 18.01(b) (Vernon Supp. 2000);[3] Taylor v. State, 54 S.W.3d 21, 24 (Tex.App.--Amarillo 2001, no pet.).  The facts must be contained in a "sworn affidavit" accompanying the application for the warrant and illustrate that (1) a specific offense was committed, (2) the specifically described property or items to be sought and seized constitute evidence of that offense or evidence that a particular person committed the offense, and (3) the property or items in question are located at or on the particular person, place or thing to be searched.  CCP art. 18.01(c); Taylor, 54 S.W.3d at 24.  Whether the facts set out in an affidavit are adequate to establish probable cause depends on the totality of the circumstances.  See Ramos v. State, 934 S.W.2d 358, 362-63 (Tex.Crim.App. 1996).  The facts do so when the facts in the affidavit are sufficient basis for the magistrate to reasonably conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place.  See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).  The magistrate may draw reasonable inferences from facts and circumstances alleged in the affidavit.  See Ramos, 934 S.W.2d at 363.  When the dispute is over the existence of probable cause to support the magistrate's decision to issue the search warrant, our review is restricted to the four corners of the affidavit accompanying the request for the warrant.  See Oubre v. State, 542 S.W.2d 875, 877 (Tex.Crim.App. 1976).

To justify a magistrate's finding that an affidavit is sufficient to establish probable cause to issue a search warrant, the facts set out in the affidavit must not have become

---

[3]Further reference to the Code of Criminal Procedure will be as "CCP ___."

stale when the magistrate issues the search warrant. See Rowell v. State, 14 S.W.3d 806, 809 (Tex.App.--Houston [1st Dist.] 2000), aff'd, 66 S.W.3d 279 (Tex.Crim.App. 2001); Guerra v. State, 860 S.W.2d 609, 611 (Tex.App.--Corpus Christi 1993, pet. ref'd). To determine whether the facts supporting a search warrant have become stale, we examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. See Rowell, 14 S.W.3d at 809. When the affidavit recites facts indicating activity of a protracted and continuous nature or a course of conduct, the passage of time becomes less significant. Id.; Lockett v. State, 879 S.W.2d 184, 189 (Tex.App.--Houston [14th Dist.] 1994, pet. ref'd).

The standard of review for a trial court's ruling on a motion to suppress is abuse of discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). In conducting our review, we give almost total deference to the trial court's determination of historical facts, especially to the extent the determination is founded on credibility and demeanor of witnesses, but we review the court's application of search and seizure law *de novo*. See Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Appellate review of an affidavit in support of a search warrant is not *de novo*, but rather, great deference is given to the magistrate's determination of probable cause. See Gates, 462 U.S. at 236, 103 S.Ct. at 2331.

The challenged affidavit details (1) the precise address and location of the residence in question; (2) information in the affidavit which was provided by a confidential

8

informant who had previously provided credible information to the Department of Public Safety (DPS) officer making the affidavit; (3) facts corroborating part of the information provided by the informant; (4) the length of the affiant's investigation of appellant as over three months and facts substantiating appellant's having occupied the residence for over 10 months; (5) that appellant's girlfriend, who also lived in the residence, "is" purchasing an average amount of $300 per week of lithium batteries and actifed, which the affiant knows by experience are components for manufacturing methamphetamine, along with anhydrous ammonia and other substances; and (6) appellant's vehicle was parked at the residence at the time the affidavit was executed at 5:00 p.m. on August 3, 1999. Information detailed, as received from the informant, included information that: (1) the informant "purchases" and has received actual transfer of amphetamine and methamphetamine from appellant, and specified May 20, 1999 as one purchase date; (2) the informant communicates with appellant via a pager to arrange purchases of methamphetamine; (3) the informant would arrange with appellant for methamphetamine purchases from appellant by appellant's leaving the methamphetamine at a pre-determined location in the vicinity of the residence where the informant would pick the drugs up; (4) the informant had delivered five-gallon tanks containing anhydrous ammonia to appellant at the residence in exchange for payment from appellant; (5) appellant had previously told the informant that appellant manufactured large amounts of methamphetamine; and (6) all of the occurrences detailed by the informant had occurred in the past six months.

9

In Lockett, the affiant was a federal officer who had engaged in a several-month investigation of Lockett for being a felon in possession of firearms. The affidavit underlying the search warrant for firearms was signed on March 12, 1991, and was executed on March 15th. The affidavit specified information by informants who had seen firearms in Lockett's house in the latter months of 1990, and in one instance at some unspecified times during the last three months before the affidavit was executed. The Lockett court concluded that the affidavit was not based on stale information because the magistrate could have concluded that Lockett had been in possession of firearms over an extended period of time which continued until the time the warrant was issued. See Lockett, 879 S.W.2d at 189.

The affidavit before us contains facts and results of an investigation from which a magistrate could conclude that an extended course of conduct involving manufacturing and selling of amphetamines was centered in appellant's house. The affidavit used language indicating both past and current activities which were continuing at the time the affidavit was executed. We conclude that a magistrate could have reasonably concluded that there was a fair probability that methamphetamine would be found in the residence. See Gates, 462 U.S. at 238, 103 S.Ct. at 2332.

As to reliability of information from the informant, the affidavit sets out that the affiant had previously received credible information from the informant, parts of the informant's information was independently corroborated through the Vernon police

10

department and the informant identified appellant and his girlfriend from recent photographs produced by the affiant.

An informant's credibility is but one factor to be weighed in considering the totality of the circumstances as to whether the magistrate could have determined the existence of probable cause to believe that contraband or evidence was located in a particular place. See Gates, 462 U.S. at 232-33, 103 S.Ct. at 2329-30; Ramos, 934 S.W.2d at 362-63; State v. Ozuna, 88 S.W.3d 307, 310 (Tex.App.--San Antonio 2002, pet. ref'd). Giving due deference to the magistrate's decisions that reliability of the informant was sufficiently shown and that the totality of the circumstances yielded a fair probability that methamphetamine would be found in the residence, we conclude that the magistrate's discretion was not abused in relying on the affidavit and the informant's information included therein.

As to appellant's assertion that the word "for" in the affidavit renders the affidavit unreliable, we note that the magistrate's task in evaluating an affidavit is to make practical common sense decisions. See Hennessy v. State, 660 S.W.2d 87, 89 (Tex.Crim.App. 1983). No testimony was offered at the suppression hearing in the trial court. Thus, questions of credibility and demeanor of witnesses do not insert themselves into our evaluation of the trial court's ruling, and we will consider the magistrate's determination using the *de novo* standard of review, but giving great deference to the magistrate's determination of probable cause. See Lane v. State, 971 S.W.2d 748, 751-52 (Tex.App.–Dallas 1998, pet. ref'd).

11

Given the context of and purpose for the statement being made in the probable cause affidavit as a whole, the possible typographical error in the affidavit wherein the affiant sets out that he has received credible information in the past "for" the informant, the magistrate, in using a common-sense approach, could reasonably have concluded that the word "for" was a typographical error and that the word intended was "from." See Olivarri v. State, 838 S.W.2d 902, 905 (Tex.App.--Corpus Christi 1992, no pet.). We defer to such determination, as did the trial court. The trial court did not err in failing to grant appellant's motion to suppress. We overrule issue four.

## ISSUES FIVE AND SIX: ORAL STATEMENTS BY APPELLANT AFTER ARREST

Appellant was outside when officers executing the search warrant approached the house to be searched. He was detained while officers searched the house. In the house officers found what appeared to be quantities of methamphetamine, drug paraphernalia, and equipment and supplies consistent with a methamphetamine manufacturing operation. Appellant was then placed under arrest and given Miranda[4] warnings. Following his arrest, appellant made oral statements which the State offered and the trial court admitted at trial. The exact points at which the statements were made are not clear from the record. The statements were unquestionably made (1) during the time the officers were completing the search of the house and securing evidence they found; (2) after appellant had been

---

[4]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966).

12

arrested and given <u>Miranda</u> warnings[5]; and (3) without having been recorded or videotaped.

The first statement was, "I knew sooner or later this was bound to happen." The next was, "Handle the tanks with anhydrous carefully. They will be okay." The third was, "Don't spill the liquid from the glass vase located in the front room." The last was in regard to some glass jars containing liquid, "You might as well put them with everything else that tested positive."

By his issues numbers five and six, appellant asserts that the oral statements should have been excluded from evidence because (1) they were the product of a search and seizure based on an illegal search warrant, (2) the provisions of CCP article 38.22 were not complied with, and (3) since article 38.22 was not complied with, the statements could only have been admitted as *res gestae* statements, and they did not qualify as such. Appellant asserts that his statements were not in the nature of excited utterances, he was not emotionally stimulated, or in the grip of any shocking event, and relies on <u>Smith v. State</u>, 514 S.W.2d 749 (Tex.Crim.App. 1974).

The State asserts that the statements are *res gestae* of the arrest and offense, and are admissible under article 38.22 § 5. The State refers us to <u>Etheridge v. State</u>, 903 S.W.2d 1 (Tex.Crim.App. 1994).

---

[5]<u>See</u> <u>Robertson v. State</u>, 871 S.W.2d 701, 714 (Tex.Crim.App. 1993) for the requirement as to <u>Miranda</u> warnings when statements are offered as *res gestae*.

We have previously determined that the search warrant was valid. Thus, appellant's allegation that the trial court erred in refusing to exclude the statements as the product of an illegal search is without merit.

Article 38.22 § 5 provides:

> Nothing in this article precludes the admission of a statement made by the accused . . . that is the res gestae of the arrest or of the offense, . . . .

In Smith, officers were in the process of searching a residence pursuant to a search warrant when Smith entered the house. Smith was arrested and given Miranda warnings. Approximately 10-15 minutes later, one of the officers showed Smith a bag found under a bed mattress and asked Smith what it was. Smith responded that it was his and was "stuff," which was interpreted at trial to indicate heroin. The Court of Criminal Appeals held that Smith's statements were not admissible as *res gestae* statements. In so holding, the Court noted that the statements were not made spontaneously, were in answer to questioning by an officer some 10-15 minutes after the arrest, and the record was silent as to whether Smith was in a condition of excitement, emotional stimulation or in the grip of any shocking event. See Smith, 514 S.W.2d at 753. Etheridge, relied on by the State, distinguished Smith on the facts in determining that defendant's post-arrest confession was admissible. In Etheridge, the record contained evidence that the defendant was in an emotional state when he made the post-arrest confession to having killed the victim. See Etheridge, 903 S.W.2d at 15.

14

Statements by defendants which are classified as *res gestae* statements can be either statements (1) made while a defendant is in an emotional, excited state or in the throes of a shocking event or (2) statements which are described as verbal acts. See Ramos v. State, 419 S.W.2d 359, 362-64 (Tex.Crim.App. 1967) (statement admissible under verbal act doctrine "sometimes referred to as the so-called *res gestae* rule"). In Jones v. State, 458 S.W.2d 654 (Tex.Crim.App. 1970), the appellant was a passenger in a vehicle which was stopped because of the driver's possible intoxication. During the stop, Jones exited the vehicle and was interrogated by officers concerning a bottle of pills found in the glove compartment. Appellant made statements that he and the driver had purchased the pills in Mexico. The Court of Criminal Appeals held that even in the absence of a showing of spontaneity to justify admission under the "true *res gestae* rule," the statements were admissible under the verbal act doctrine, or "so-called" *res gestae* rule. Id. at 656. And, in Harryman v. State, 522 S.W.2d 512 (Tex.Crim.App. 1975), Harryman was arrested and searched for weapons. During the search, a condom tied in a knot and containing several smaller condoms was discovered inside his belt. The searching officer asked Harryman, "What is this?", to which he replied that it was heroin. Citing CCP 38.22, Jones, and other precedent, and without discussion of whether the record contained evidence of Harryman's state of mind or the spontaneity of the statement, the Court of Criminal Appeals held that admission of the statement as *res gestae* of the arrest was not reversible error. Harryman, 522 S.W.2d at 516-17.

15

The trial court could have, within its discretion, determined that appellant's first statement ("I knew sooner or later this was bound to happen.") was *res gestae* of the arrest. Admission of the statement was not an abuse of discretion. Even if appellant's first statement was admitted in error, however, after examining the record as a whole and in a neutral light, we conclude that its admission was harmless. See TRAP 44.2(b); Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

We need not decide if the remainder of appellant's statements were admissible as either true *res gestae* or verbal act *res gestae*. The trial court's action in admitting evidence is not error if the evidence is admissible for any purpose, regardless of the reason for admitting the evidence. See Sewell v. State, 629 S.W.2d 42, 45 (Tex.Crim.App. 1982). CCP 38.22 § 3(c) provides that § 3(a) does not apply to preclude admission of a statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused. The provisions of § 3(c) do not limit the manner in which the facts asserted are found to be true. See Briddle v. State, 742 S.W.2d 379, 388 (Tex.Crim.App. 1987). Subsequent corroboration suffices. See Port v. State, 791 S.W.2d 103, 107 (Tex.Crim.App. 1990). If one of multiple assertions in the statement is found to be true and conduces to show the guilt of the accused, then the statement in its entirety is admissible. Id.

With the exception of the first statement complained of by appellant ("I knew sooner or later this was bound to happen."), the statements dealt with factual matters concerning contents of drug paraphernalia found by the officers in the house being searched. The

16

statements described the contents of tanks as anhydrous ammonia; described the contents of a glass vase in the front room as a liquid; and effectively stated that the contents of glass jars would test "positive." All three statements later proved to be factually correct and conduced with other evidence to prove appellant's guilt of the crime charged. The trial court did not abuse its discretion in admitting the statements. See id.

We overrule issues five and six.

### ISSUE SEVEN: LESSER-INCLUDED OFFENSE CHARGE

Appellant's seventh issue urges that the trial court erred in denying his requested lesser-included charge for possession of only 200-400 grams of methamphetamine. In presenting his issue, he references testimony of his chemist expert Courtney as to how much methamphetamine would be produced if ". . . you took the chemicals in [exhibits] 6, 7 and 8 in the stage that they are right now and went to the final product . . . ." Courtney estimated that the methamphetamine finally produced from the exhibits, were it processed to completion, would probably be "around-somewhere around half of [400 grams]."

The State counters that the testimony referenced by appellant is no evidence of weight of the controlled substance which appellant was indicted for possessing because the substance appellant possessed was not in final form, but was a mixture, solution or other substance containing the controlled substance. As such, the statute defined "controlled substance" as the aggregate weight of the entire liquid containing methamphetamine as well as the methamphetamine in solution. Further, the State urges

17

that the error, if any, was harmless because the punishment range for possession of 400 grams or more is 25 years to life and the punishment range for possession of 200-400 grams is 10 years to life. The State reasons that since appellant was sentenced to 95 years incarceration, conviction of the lesser offense of 200-400 grams would not have resulted in a lesser sentence.

To determine if a defendant is entitled to a lesser-included offense instruction, a two prong test applies: (1) the lesser-included offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. See Lofton v. State, 45 S.W.3d 649, 651 (Tex.Crim.App. 2001); Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000).

The State is correct that Courtney's testimony is no evidence that appellant possessed only 200-400 grams of controlled substance. The testimony referred to was a hypothetical question based on different facts from those in evidence. The hypothetical asked Courtney to assume a change in the composition and weight of the substance in appellant's possession based on "cooking" of the substances beyond the stage in which they were found during the search. Because there is no evidence which would have permitted the jury to rationally find that appellant was guilty only of possessing 200-400 grams of methamphetamine, the trial court did not err in refusing to charge the jury on a lesser-included offense. We also agree with the State that even if refusal to charge the

18

jury on the lesser offense was error, the error was harmless given the punishment assessed by the jury.  See TRAP 44.2(b).

## ISSUE EIGHT:  SUFFICIENCY OF EVIDENCE
## OF WEIGHT OF METHAMPHETAMINE

Issue eight challenges the legal sufficiency of the evidence that appellant possessed 400 or more grams of methamphetamine.  He relies on various authorities, including Cawthon v. State, 849 S.W.2d 346 (Tex.Crim.App. 1992), to support his assertion that the State failed to prove the weight of the methamphetamine which appellant was charged with possessing.  He posits that the State's proof was insufficient because it did not prove the weight of the actual methamphetamine and the weight of the other substances in which the drug was found or with which it was mixed.  The State responds that Cawthon is inapplicable because the statute under which appellant was convicted had been amended and differed from that under consideration in Cawthon, and because the definition of "controlled substance" under which appellant was charged did not require proof of the separate weights of the methamphetamine and any dilutants or other substances with which the methamphetamine was mixed.  We agree with the State.

Under Cawthon, the State was required to prove that an adulterant or dilutant added to the illegal substance (methamphetamine), with intent to increase the quantity, did not affect the activity of the illegal substance.  The statute under which appellant was convicted is not so formulated as was the statute under consideration in Cawthon.  At the time of appellant's indictment, the definition of "controlled substance" included a drug, an

adulterant, a dilutant, and an immediate precursor, see TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon 2003), and "adulterant or dilutant" was defined by the statute as any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance.  TEX. HEALTH & SAFETY CODE § 481.002(49) (Vernon 2003).  Cawthon is inapposite to the matter before us.

As an appellate court reviewing a challenge to the legal sufficiency of the evidence, we consider all the record evidence, including direct and circumstantial, both admissible and inadmissible, in the light most favorable to the jury's verdict.  We then determine if any rational jury could have found all the essential elements of the offense beyond a reasonable doubt based upon such record evidence.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  A reviewing court is to presume that the evidence is legally sufficient to support the jury verdict.  See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

Both the State and appellant presented chemist witnesses who testified to the weight and composition of the methamphetamine, mixtures of liquids containing methamphetamine, and precursors of methamphetamine seized from the house searched when appellant was arrested.  The chemists' testimony was in agreement that the weight of powder, liquids containing some levels of methamphetamine and precursors of methamphetamine exceeded 400 grams.  Appellant argues that the weight of pure methamphetamine without any dilutants or adulterants (i.e., with the chemicals and some

20

or all of the dilutants and adulterants removed by further processing of the mixtures) would have been less than 400 grams.[6]

Under the statutory definition, which the trial court included in the jury charge, the State did not have to prove that the amount of "pure" methamphetamine was 400 grams or more, or that dilutants did not affect the chemical activity of the methamphetamine. The evidence was legally sufficient to support a jury finding that the amount of controlled substance in question was 400 grams or more. We overrule issue eight.

## ISSUE NINE: ALLOWING STATE TO EXPAND INDICTMENT VIA THE JURY CHARGE

By his issue nine, appellant complains that the jury charge allowed the State to expand the scope of the crime for which the jury could convict appellant from the crime charged in the indictment. His objection at trial was that the charge defined "controlled substance" as including the aggregate weight of any mixtures, solution or other substance contained in a controlled substance, while the indictment only indicted for possession of methamphetamine.

As previously noted, appellant was indicted for "intentionally or knowingly possess[ing], with intent to manufacture, a controlled substance, namely,

_____

[6]Because of our disposition of appellant's issue, we need not consider the weight of any precursors to methamphetamine which were found.

21

methamphetamine, in an amount of 400 grams or more." See TEX. HEALTH & SAFETY CODE §§ 481.112, 124 (Vernon 2003). The jury was charged in accordance with the language of the indictment and found appellant guilty of "possession of a controlled substance, methamphetamine in an amount of 400 grams or more, with intent to manufacture, as alleged in the indictment." The jury was instructed, in part, that (1) methamphetamine was a controlled substance and (2) "'controlled substance' means a substance, including a drug, an adulterant, a dilutant, and an immediate precursor. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance." The definition of controlled substance conformed to the statutory definition.

Appellant cites no authority for his position other than general authority for the proposition that the jury charge should not enlarge the crime pled in the indictment. In regard to such position he references Garcia v. State, 640 S.W.2d 939 (Tex.Crim.App. 1982).

Under the record before us, appellant's reliance on Garcia is misplaced. In Garcia, the defendant was charged with hindering an arrest "intentionally with intent to hinder" the arrest. The jury was charged to find the defendant guilty if the defendant "knowingly or intentionally" hindered the arrest. The jury charge was held to have been defective in two ways for allowing the defendant to be convicted for knowingly *or* intentionally hindering the arrest: (1) the inclusion of "knowingly" resulted in the jury charge allowing conviction for acts which were not a crime under the statute which proscribed only actions taken with

22

intent to hinder an arrest; and (2) the jury charge allowed conviction for a "knowingly" *mens rea* which was not included in the indictment. Id. at 941.

By his issue, appellant does not urge that the charge allowed conviction for actions which were not a crime. Neither does he claim that the definition of controlled substance did not conform to the statute nor that the instruction that the weight of the substance included the aggregate weight of any mixture, solution or other substances containing a controlled substance was erroneous. Appellant's written Exception To Form of Indictment stated that he was charged by indictment "with the offense of Possession with Intent to Manufacture a Controlled Substance." The exception urged that the indictment failed to specify *what* he "possessed with the intent to manufacture a controlled substance, to wit; methamphetamine [sic]". At the pre-trial presentation of the exception, the State responded to appellant's exception argument by specifying that the indictment specified, and the State's proof would be, that appellant possessed two different substances which comprised methamphetamine: (1) the finished product, and (2) product that was still in the process of being manufactured, which was not finished, but which nevertheless contained methamphetamine. The charge did not enlarge the indictment. Issue nine is overruled.

### ISSUE TEN: SUFFICIENCY OF THE INDICTMENT

Issue ten asserts that the trial court erred in failing to quash the indictment or to dismiss the charges against appellant because the language of the indictment did not give

him sufficient notice of the charge against him. He claims that the indictment language that he "intentionally or knowingly possess[ed], with intent to manufacture, a controlled substance, namely, methamphetamine, in an amount of 400 grams or more" did not give him adequate notice to prepare his defense to the State's proof that the weight of the methamphetamine included adulterants and dilutants. He alleges that, had he been on notice that the State was going to prove the weight of the methamphetamine, including dilutants and adulterants, his entire trial strategy would have been different.

Appellant's written Exception to Form of Indictment was filed on the morning the case was to go to trial. The written Exception specified that the indictment failed to allege what substances appellant possessed with the intent to manufacture a controlled substance, to wit: methamphetamine. When presenting the written Exception to the indictment at a pre-trial hearing, trial counsel did not assert that the indictment did not give notice of the weight of methamphetamine in question or how the weight was to be calculated. Rather, the presentation made to the trial court conformed to the written pleading: the indictment did not state what materials were possessed out of which appellant was allegedly going to manufacture methamphetamine.

To preserve error for appellate review, the issue on appeal must correspond to the objection made at trial. See Dixon v. State, 2 S.W.3d 263, 265 (Tex.Crim.App. 1998). Appellant's complaint on appeal does not conform to his written exception or to the objection presented to the trial court.

24

Moreover, appellant offers no reference to record evidence supporting the assertion that his trial strategy would have been different. An appellant urging harm from a trial court's error does not have the burden to prove harm from the error. See Ovalle v. State, 13 S.W.3d 774, 787 (Tex.Crim.App. 2000). Rather, the appellant is required only to suggest, in light of the record, how prejudice may have occurred. Id. At that point, the reviewing court must make its determination as to what effect, if any, the error had. Id. Appellant does not point out, nor does our review of the record reveal, evidence that appellant was harmed by the indictment's language. See TRAP 44.2.

Appellant's issue ten is overruled.

CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.

Phil Johnson
Chief Justice

Do not publish.